UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:
LORENZO ESTEVA,                                    Case No. 18-16645-LMI
          Debtor.                                           Chapter 11
_____/

LORENZO ESTEVA, a Florida resident,        Adv. Proc. No.:_____
DENISE OTERO VILARINO, a Florida
resident,
          Plaintiffs,
v.

UBS FINANCIAL SERVICES, INC.,
a foreign corporation and
UBS Credit Corp., a foreign corporation,
          Defendants.
_____/

**ADVERSARY COMPLAINT FOR DETERMINATION OF TBE EXEMPTION
OF JOINT BANK ACCOUNT; DETERMINATION OF THE VALIDITY AND
EXTENT OF UBS' LIEN ON JOINT BANK ACCOUNT; TURNOVER OF
FUNDS IN JOINT ACCOUNT UNDER 11 U.S.C. 542; AND UNJUST
ENRICHMENT BASED ON UBS'S RETENTION OF THE DEBTOR'S $270
MILLION BOOK OF BUSINESS AND OBJECTION TO CLAIM**

Plaintiffs, Lorenzo Esteva, the debtor and debtor-in-possession (the "Plaintiff" or

"Esteva"), and Denise Otero Vilarino, his wife ("Otero" or collectively with Esteva, the

"Plaintiffs"), sue Defendants, UBS Financial Services, Inc. ("UBSFS"), and UBS Credit

Corp. ("USBCC"), and state:

**PARTIES, VENUE, AND JURISDICTION**

1.      This is an adversary proceeding for the determination of the tenancy by

the entities status of a joint bank account at UBSFS, the determination of the validity and

extent of any security interest in the joint account arising from a security agreement

executed by Esteva only, turnover of the funds in the joint bank account, and unjust

enrichment for damages arising from USBFS' retention of Esteva's approximately $270 million book of business including an objection to any claim of USBFS or USBCC in this Chapter 11 case.

2.      The Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b).  Each matter presented is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (K) and (O).

3.      Esteva and Otero are Florida residents.

4.      UBSFS is a Delaware corporation licensed to do business as a broker-dealer in the State of Florida.

5.      UBSCC is a Delaware corporation and an affiliate of UBSFS doing business in the State of Florida.

6.      On May 31, 2018 (the "Petition Date"), the Debtor filed his voluntary Chapter 7 petition.

7.      On December 18, 2018, the Court entered the Order Converting Case Under Chapter 7 to Case Under Chapter 11 (ECF # 62).  The Debtor continues to operate and manage his properties under §§ 1107 and 1108.

## PREPETITION FACTS

8.      Esteva and Otero were married on August 2007.

9.      They have two minor children and one daughter attending college.

10.     In November 2015, UBSFS employed Esteva as a financial advisor in the International Division in its Miami office.  UBSFS hired Esteva based upon a target that he would bring $110 million in managed assets during his first year.  By the time he left, Esteva had brought approximately $270 million in managed assets to UBSFS.

11.    In December 2015, Esteva and Otero opened the joint "House Account", account number R2 XX362 YJ RMA Domestic (the "House Account").  The account is denoted "Joint Ten W/Rights Surv" but the signature cards do not disclaim tenancy by the entirety, and are attached as **Exhibit A**.

12.    The joint account was maintained at "UBS Financial Services, Inc.", 100 South East 2nd Street, 25th Floor, Miami, FL 33131.

13.    The House Account according to UBSFS is governed by the UBS Client Relationship Agreement (the "Agreement") which is attached as **Exhibit B**.

14.    The estimated balance in the account as of the Petition Date was $1,989,648.19, consisting of $500,000 from a joint account that was transferred from Merrill Lynch and the remaining balance was from the deferred compensation promissory notes to be burned off over the course of Esteva's employment with UBSFS.

15.    On March 2018, the House Account had a balance of $1,994,041, as set forth on the UBS account statement.

16.    To lure Esteva from his long-held position with Merrill Lynch he had held for the previous 26 years, UBSFS advanced Esteva compensation evidenced by four promissory notes:

     a.    December 8, 2015, $1,649,993.00 payable $164,999.30 annually through November 17, 2025 from salary and commissions with 1.89% interest rate;

     b.    March 17, 2016, $212,046.00 payable $23,560.67 annually through February 28, 2025 from salary and commissions with 1.75% interest rate;

    c.   June 14, 2016, $290,623.00 payable $32,291.44 annually through May 31, 2015 from salary and commissions with 1.68% interest rate; and

    d.   September 20, 2016, $67,328.10 payable $7,480.90 annually through August 31, 2025 from salary and commissions with 1.46% interest rate (collectively the "notes").

A copy of the notes is **Composite Exhibit C**.  The notes are payable to UBS Credit Corp., a Delaware Corporation and its successors and/or *assigns, including* all affiliates and related entities ("UBS").

17.    The notes provide that "Employee authorizes UBS to offset the above payments at the time they are due from any salary, commission, bonus, award, transition payment, or other compensation payable to the Employee by UBS and all related entities and/or any funds held by Employee in his/her UBS Financial Services Resource Management Account ("RMA") or any other account maintained at UBS, other than deferred compensation as defined in Section 409A of the Internal Revenue Code…"

18.    Esteva also entered into four transition payment agreements with UBSFS for it to repay him essentially the payments due under the notes as the payments came due from 2015 through 2025 if Esteva remained employed by UBSFS.  A copy of the transition agreement is **Exhibit E**.  The notes were to be forgiven over their term as long as Esteva remained employed and met the other conditions set forth in the transition agreements.

19.    Otero did not sign or otherwise guarantee payment of the notes.

20.    Otero did not grant UBSFS or UBSCC a security interest in the funds in the joint account.

21.    On June 6, 2017, UBSFS terminated Esteva.

22.    Otero did not execute a security agreement in favor of UBSF

23.    Plaintiffs have retained the undersigned and agreed to pay him reasonable attorneys' fees and costs.

24.    All conditions precedent to this action have occurred, been waived or were satisfied.

### COUNT 1 – DECLARATORY JUDGMENT DETERMINING TENANCY BY THE ENTIRITIES OF HOUSE ACCOUNT

25.    Plaintiffs realleges paragraphs 1 – 24 as if fully set forth herein.

26.    This is an action for declaratory judgment determining that the House Account is exempt as tenancy by the entireties property of husband and wife.

27.    There exists an actual case and controversy.

28.    The meeting of creditors was concluded January 17, 2019.

29.    Under Fed. R. Bankr. P. 4003(b)(1), a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded, which expired February 18, 2019.

30.    Neither UBSFS nor UBSCC timely objected.

31.    Esteva and Otero held the House Account as husband and wife under the six necessary characteristics: (i) unit of possession (joint ownership and control); (ii) unity of interest (their interest in the account must be identical); (iii) unity of title (the interests must have originated in the same instrument); (iv) unit of time (the interest must have commenced simultaneously); (v) survivorship; and (vi) unity of marriage.

WHEREFORE Plaintiffs respectfully requests entry of final declaratory judgment against UBSFS and UBSCC determining that the House Account is exempt as tenancy by

the entireties and granting such other and further as is just and proper under the circumstances.

### <u>COUNT 2 – DETERMINATION OF VALIDTY AND EXTENT OF LIEN</u>

32.     Plaintiffs realleges paragraphs 1 – 24 as if fully set forth herein.

33.     The House Account falls within the broad meaning of estate property.

34.      UBSFS asserts a lien on the funds in the House Account by virtue of the notes and UBS CRA.

35.     Otero did not sign or guaranty payment of the notes.

36.     UBSFS primarily relied on the following language from the CRA entitled "Security Interest"), drafted by UBSFS, as a grant by Otero of a security interest in the House Account to secure payment of the notes due to USBCC by Esteva:

> *As security for payment of <u>all liabilities of indebtedness presently outstanding or to be incurred under this or any other agreement between you and any UBS Entity</u>*, including but not limited to any loans or promissory notes, *you hereby grant to each UBS Entity a security interest in and lien on any and all Property held or carried by any UBS Entity* for you or on your behalf in or credited to any UBS Account(s)(other than qualified plan or IRA accounts or other accounts where doing so would be prohibited transaction or violation of applicable law or regulation) and in any other Account with any UBS Entity in which you may have any legal, equitable or other interest.
>
> All such Property will be subject to such security interest as collateral for the discharge of our obligations to any UBS Entity, wherever or however arising and without regard to whether or not we made loans with respect to the Property.  In enforcing our security interest, we have the discretion to determine the amount, order, and manner in which the Property will be sold and have all the rights and remedies available to a secured party under the Uniform Commercial Code (UCC) in addition to all other rights in this Agreement or by law.

**Exhibit B** at p. 29 (emphasis added).

37.     In addition to the above, UBSFS also relied on the following additional language drafted by it from the CRA:

> We may satisfy any and all amounts ***you owe us*** *in connection with any of your accounts or agreements with us*, or any other agreement between you and UBS Entity, including but not limited to any loans, promissory notes or tax obligations, from Property we hold or carry in any of your Accounts with us (other than qualified or IRA accounts or other accounts where doing so would be prohibited transaction or violation of applicable law or regulation).

*Id*. (emphasis added).

38.     Under the CRA, you is defined as "'You', 'your' and 'yours' refer to you as a client of UBS.  *Id*. at p. 19 or 42.

39.     The alleged granting language above, drafted by the world-renown provider of ultra-sophisticated wealth management and financial products, by its own terms is only a grant by Otero of a security interest in the House Account ***to secure payment of debts Otero owed UBSFS***.  Nowhere does Otero grant UBSFS a security interest ***to secure payment of debts owed by Esteva***.

40.     Otero does not owe UBSFS or UBSCC under any agreement or on any account (i.e., overdraft).

41.     Otero did grant UBSFS or UBSCC a security interest in the House Account to secure repayment of a debt owed solely by Esteva.

42.     Esteva alone cannot grant UBSFS or UBSCC a valid security interest in the House Account to secure repayment of his debt.

43.     UBSFS or UBSCC as only a creditor of Esteva do not hold a valid security interest in the House Account.

**WHEREFORE** Plaintiffs respectfully request entry of a final judgment determining that UBSFS and UBSCC do not hold a valid security interest, lien, right of set off, or any other encumbrance against the House Account and determining that the House Account is free and clear of all liens, claims, and encumbrances of UBSFS and UBSCC and granting such other and further relief as may be just and proper under the circumstances.

## COUNT 3 - TURNOVER OF PROPERTY UNDER § 542

44.    The Debtor realleges paragraphs 1 through 24 as if fully set forth herein.

45.    UBSFS is in possession, custody, or control of the funds in the House Account.

46.    The funds in the House Account may be used by Esteva and Otero to fund the Debtor's chapter 11 case or are funds that the Debtor may exempt under 11 U.S.C. § 522.

47.    The funds in the House Account are in excess of $1.9 million and not of inconsequential value.

WHEREFORE Esteva respectfully requests entry of final judgment against UBSFS directing the immediate turnover of the funds in the House Account, plus pre and post judgment interest and attorneys' fees and costs as may be applicable and for such other and further relief as may be just and proper under the circumstances.

## COUNT 4 – UNJUST ENRICHMENT AND OBJECTION TO CLAIM

48.    Plaintiff realleges paragraphs 1 through 24 as if fully set forth herein.

49.    Esteva brought his entire book of business consisting of approximately $270 million of serviceable account deposits to UBSFS in December 2015.

50.     UBSFS terminated Esteva in July 2017 but retained his entire approximate $270 million book of business.

51.     UBSFS continued to earn millions of dollars of commissions from servicing Esteva's book of business.

52.     UBSFS knew Esteva brought the book of business to UBSFS with full knowledge Esteva expected to be compensated a portion of the commissions UBSFS earned from his book of business.

53.     Under the circumstances it would be unfair and inequitable for UBSFS to retain the millions of dollars of commissions without compensation to Esteva for bringing the book of business to UBSFS.

54.     As well, to the extent UBSFS intends to assert a claim in this Chapter 11 bankruptcy case, secured or otherwise, Esteva objects to such claim to the extent such claim fails to setoff against the amount of the claim the amount of damages arising under this claim for unjust enrichment.

**WHEREFORE** Esteva respectfully requests entry of final judgment against UBSFS awarding Esteva damages for unjust enrichment and disallowing any claim of UBSFS to the extent of any such damages awarded plus pre and post judgment interest and attorneys' fees and costs as may be applicable and for such other and further relief as

may be just and proper under the circumstances.

Dated this February 26, 2019.


AM LAW
*Counsel for Plaintiff Esteva*[1]
7385 SW 87th Avenue, Suite 100
Miami, FL 33173
PH: 305.441.9530
FX: 305.595.5086
***By:/s/ Gary M. Murphree***
Gary M. Murphree, Esq.
FBN 996475
Brandy Gonzalez-Abreu, Esq.
FBN: 017685

---

[1] Counsel for Plaintiff Otero, Danial Foodman, Esq., WNF Law PL, is the subject of a pro hoc vice motion to be filed concurrently herewith.

# Signature Page

**Denise Otero Vilarino**

| Account Number and Description | Signature Requirement |
| --- | --- |
| R2 90147 RMA Domestic—Joint Ten W/Rights Surv | Client Relationship Agreement |

**Lorenzo Esteva**

| Account Number and Description | Signature Requirement |
| --- | --- |
| R2 90147 RMA Domestic—Joint Ten W/Rights Surv | Client Relationship Agreement |

By signing below and depositing cash or securities in my account, I acknowledge that I have read, understand and agree with the enclosed UBS Client Relationship Agreement, as well as the terms, conditions and disclosures in the enclosed Agreements and Disclosures booklet.

**Margin Agreement**
I acknowledge that when I use margin privileges, UBS will hold the securities in my Account as collateral against the amounts I borrow. I agree to keep sufficient positions and margin in my Account to meet any margin calls UBS may be required to issue. By signing below, I agree that the Margin Agreement in my Client Relationship Agreement applies to all of my accounts, including any accounts that I may open in the future. *Note: UBS does not extend margin for certain types of accounts (e.g., IRA and ERISA Plan accounts, Coverdell Education Savings Accounts, 403(b)(7) Accounts, UGMA/UTMA, Estate or 529 Plan Accounts).*

Likewise, I acknowledge and agree that certain securities in my account, including any account I may open in the future, may be loaned to UBS or to other persons or entities as described in the Margin Agreement.

**Electronic Delivery Consent**
As you requested, we have sent your agreements and disclosure booklet and other account-related documents electronically to estevlo@gmail.com, which we consider to be the e-mail address of record for all owners of the account. The information is also available at www.ubs.com/accountdisclosures or by request to your Financial Advisor, Lorenzo Esteva at 1-305-536-9200.

0155165833          Page 1 of 3

Continued on next page...



Exhibit  A    Page 1 of 3
Signature cards to home account



**Denise Otero Vilarino**

**For Accounts:**
R2 90147 RMA Domestic - Joint Ten W/Rights Surv

**Enter your Tax ID Number:**

$-\boxed{2}\boxed{3}\boxed{9}\boxed{4}$


ENTER SSN HER

☐ Check here if you have been notified by the IRS that you are subject to backup withholding, and therefore have crossed out item (2) below.

**Exemption from FATCA reporting code (if any):**_____

**W-9 Form Certification**
Under penalties of perjury, I certify that: (1) the number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and 2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and (3) I am a U.S. citizen or other U.S. person (defined in the instructions); and (4) The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification Instruction:** You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

**The Client Relationship Agreement contains a pre-dispute arbitration clause located in the final section under the title "Arbitration."**

SIGN AND
DATE HERE

X _____     12. 1. 13

Denise Otero Vilarino                    Date

0155165833                Page 2 of 3



Exhibit A    Page 2 of 3
Signature cards to home account

Continued on next page..

**Lorenzo Esteva**

**For Accounts:**
R2 90147 RMA Domestic - Joint Ten W/Rights Surv

**Enter your Tax ID Number:**

3 6 8 2

**ENTER SSN HERE**

☐ Check here if you have been notified by the IRS that you are subject to backup withholding, and therefore have crossed out item (2) below.

**Exemption from FATCA reporting code (if any):**_____ __

**W-9 Form Certification**
Under penalties of perjury, I certify that: (1) the number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and 2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and (3) I am a U.S. citizen or other U.S. person (defined in the instructions); and (4) The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification Instruction:** You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

**The Client Relationship Agreement contains a pre-dispute arbitration clause located in the final section under the title "Arbitration."**

**SIGN AND DATE HERE**

X _____          12.1.15
Lorenzo Esteva                              Date

**Address of Record**
3672 Bayview Rd
Coconut Grove, FL  33133-6503

**Email Address of Record**
estevlo@gmail.com

0155165833          Page 3 of 3



Exhibit  A    Page 3 of 3
Signature cards to home account

# Signature Page

**Denise Otero Vilarino**

| Account Number and Description | Signature Requirement |
| --- | --- |
| R2 90147 RMA Domestic - Joint Ten W/Rights Surv | Client Relationship Agreement |

**Lorenzo Esteva**

| Account Number and Description | Signature Requirement |
| --- | --- |
| R2 90147 RMA Domestic - Joint Ten W/Rights Surv | Client Relationship Agreement |

By signing below and depositing cash or securities in my account, I acknowledge that I have read, understand and agree with the enclosed UBS Client Relationship Agreement, as well as the terms, conditions and disclosures in the enclosed Agreements and Disclosures booklet.

**Margin Agreement**

I acknowledge that when I use margin privileges, UBS will hold the securities in my Account as collateral against the amounts I borrow. I agree to keep sufficient positions and margin in my Account to meet any margin calls UBS may be required to issue. By signing below, I agree that the Margin Agreement in my Client Relationship Agreement applies to all of my accounts, including any accounts that I may open in the future. *Note: UBS does not extend margin for certain types of accounts (e.g., IRA and ERISA Plan accounts, Coverdell Education Savings Accounts, 403(b)(7) Accounts, UGMA/UTMA, Estate or 529 Plan Accounts).*

Likewise, I acknowledge and agree that certain securities in my account, including any account I may open in the future, may be loaned to UBS or to other persons or entities as described in the Margin Agreement.

**Electronic Delivery Consent**

As you requested, we have sent your agreements and disclosure booklet and other account-related documents electronically to estevlo@gmail.com, which we consider to be the e-mail address of record for all owners of the account. The information is also available at www.ubs.com/accountdisclosures or by request to your Financial Advisor, Lorenzo Esteva at 1-305-536-9200.

55165043_0250

de 0250 0703 7401 11/25/2015



Package ID: 0155165043

*Continued on next page...*

## Exhibit B Page 1 of 42
## Client Relationship Agreement (CRA)

1

**SIGN AND RETURN TO UBS**

**Denise Otero Vilarino**

**For Accounts:**
R2 90147 RMA Domestic - Joint Ten W/Rights Surv

**Enter your Tax ID Number:**

☐☐☐ – ☐☐ – ☐☐☐☐

ENTER SSN HERE

☐ Check here if you have been notified by the IRS that you are subject to backup withholding, and therefore have crossed out item (2) below.

**Exemption from FATCA reporting code (if any):_____**

**W-9 Form Certification**
Under penalties of perjury, I certify that: (1) the number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and 2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. citizen or other U.S. person (defined in the instructions), and (4) The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification Instruction:** You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

**The Client Relationship Agreement contains a pre-dispute arbitration clause located in the final section under the title "Arbitration."**

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

X _____

Denise Otero Vilarino          Date

SIGN AND DATE HERE

de 0250 3701 7402 11/25/2015



Exhibit  B  Page 2 of 42
Client Relationship Agreement (CRA)

*Continued on next page...*

2

**Lorenzo Esteva**

**For Accounts:**
R2 90147 RMA Domestic - Joint Ten W/Rights Surv

**Enter your Tax ID Number:**

☐☐☐ – ☐☐ – ☐☐☐☐

 ENTER SSN HERE

☐ Check here if you have been notified by the IRS that you are subject to backup withholding, and therefore have crossed out item (2) below.

**Exemption from FATCA reporting code (if any):_____**

**W-9 Form Certification**
Under penalties of perjury, I certify that: (1) the number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and 2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. citizen or other U.S. person (defined in the instructions), and (4) The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification Instruction:** You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

**The Client Relationship Agreement contains a pre-dispute arbitration clause located in the final section under the title "Arbitration."**

X _____        _____         SIGN AND DATE HERE

Lorenzo Esteva                                    Date

**Address of Record**

3672 Bayview Rd
Coconut Grove, FL  33133-6503

**Email Address of Record**

estevlo@gmail.com

de 0250 3702 7403 11/25/2015



Exhibit  B  Page 3 of 42
Client Relationship Agreement (CRA)

3

Intentionally Left Blank

de 0250 3702 7404 11/25/2015

Client Relationship Agreement (CRA)

**UBS**

**UBS Financial Services Inc.**

Account Number   R2 90147

TIN

## Bill Payment Service

`FA`

The Bill Payment Service allows you to pay your bills and/or make payments to a third party vendor without writing and mailing a check. If paying bills via ResourceLine℠, complete the information. **UBS Online Services clients can set up Vendor/Payee information online.**

*Please note that RMA®, IRMA® and Business Services Account BSA® offers an easy-to-use expense-coding system. Using pre-assigned letters (except H, I, J, O, Q and X), you may establish your own expenditure categories and track them either on your UBS Financial Services Inc. check register or online. When writing checks and submitting bill payments, be sure to indicate your expense code. For your convenience, all checking and bill payment expense codes are totaled on your monthly premier statement.

**Please attach a separate sheet to add more Vendors/Payees.**

**VENDOR/PAYEE**

Name of Vendor/Payee

Vendor/Payee Account Number

Address Line 1

Address Line 2

City          State/Province          Zip/Postal Code          Country

*Expense Code (Optional):

Vendor/Payee Telephone Number

**Recurring Payments:** Start date may not be greater than 1 year from the current date and end date not greater than 30 years from current date.

$                                                $

Amount ($100,000 maximum)     Start Date     End Date     Final Payment Amount (specify if different from recurring amount)

Frequency: (select one)  ☐ Weekly   ☐ Bi-weekly   ☐ Monthly   ☐ Quarterly   ☐ Semi-annually   ☐ Annually

**On Demand Payments:** On Demand Payments require the client's verbal consent for the branch to initiate the payment.

☐ Payments permitted - Upon verbal authorization in an amount not to exceed: $_____ ($100,000 if left blank)

**VENDOR/PAYEE**

Name of Vendor/Payee

Vendor/Payee Account Number

Address Line 1

Address Line 2

City          State/Province          Zip/Postal Code          Country

*Expense Code (Optional):

Vendor/Payee Telephone Number

**Recurring Payments:** Start date may not be greater than 1 year from the current date and end date not greater than 30 years from current date.

$                                                $

Amount ($100,000 maximum)     Start Date     End Date     Final Payment Amount (specify if different from recurring amount)

Frequency: (select one)  ☐ Weekly   ☐ Bi-weekly   ☐ Monthly   ☐ Quarterly   ☐ Semi-annually   ☐ Annually

**On Demand Payments:** On Demand Payments require the client's verbal consent for the branch to initiate the payment.

☐ Payments permitted - Upon verbal authorization in an amount not to exceed: $_____ ($100,000 if left blank)

0155165831

de 0250 3703 7405 11/25/2015

AC-FA (Rev. 10/15)

©2015 UBS Financial Services Inc. All rights reserved. Member SIPC.



Exhibit  B  Page 5 of 42
Client Relationship Agreement (CRA)

5



**VENDOR/PAYEE**

Name of Vendor/Payee

Vendor/Payee Account Number

Address Line 1

Address Line 2

City          State/Province          Zip/Postal Code          Country

*Expense Code (Optional):

Vendor/Payee Telephone Number

**Recurring Payments:** Start date may not be greater than 1 year from the current date and end date not greater than 30 years from current date.

$                              $

Amount ($100,000 maximum)      Start Date      End Date      Final Payment Amount (specify if different from recurring amount)

Frequency: (select one)  ☐ Weekly    ☐ Bi-weekly    ☐ Monthly    ☐ Quarterly    ☐ Semi-annually    ☐ Annually

**On Demand Payments:** On Demand Payments require the client's verbal consent for the branch to initiate the payment.

☐ Payments permitted - Upon verbal authorization in an amount not to exceed: $_____ ($100,000 if left blank)

**VENDOR/PAYEE**

Name of Vendor/Payee

Vendor/Payee Account Number

Address Line 1

Address Line 2

City          State/Province          Zip/Postal Code          Country

*Expense Code (Optional):

Vendor/Payee Telephone Number

**Recurring Payments:** Start date may not be greater than 1 year from the current date and end date not greater than 30 years from current date.

$                              $

Amount ($100,000 maximum)      Start Date      End Date      Final Payment Amount (specify if different from recurring amount)

Frequency: (select one)  ☐ Weekly    ☐ Bi-weekly    ☐ Monthly    ☐ Quarterly    ☐ Semi-annually    ☐ Annually

**On Demand Payments:** On Demand Payments require the client's verbal consent for the branch to initiate the payment.

☐ Payments permitted - Upon verbal authorization in an amount not to exceed: $_____ ($100,000 if left blank)

---

**Optional Pay Credit Card Feature**
The optional Pay Credit Card feature of the UBS Bill Payment Service allows you to pay your UBS Visa Signature® credit card bill automatically.

Select the amount of your recurring payment:

☐ Statement Balance (pay bill in full)    ☐ Minimum Payment Due    ☐ Fixed Payment Amount: $_____ * (enter specified amount)

* If your Minimum Payment Due for any month is greater than the fixed payment amount you selected, you authorize us to deduct that Minimum Payment Due. If your Statement Balance for any month is less than the fixed payment amount you selected, you authorize us to deduct that Statement Balance.

---

de 0250 3703 7406 11/25/2015

0155165831



AC-FA (Rev. 10/15)          ©2015 UBS Financial Services Inc. All rights reserved. Member SIPC.

6

Exhibit  B  Page 6 of 42
Client Relationship Agreement (CRA)

**UBS**

---

**Client Authorization**

I authorize UBS Financial Services Inc. to initiate payments indicated above (including adjustments for any entries made in error) from my RMA, IRMA or Business Services Account BSA, and authorize UBS Financial Service Inc. to debit the same to such account. I authorize UBS Financial Services Inc. to make changes and/or cancellations to transactions requested by me.

I understand these instructions will remain in effect until UBS Financial Services Inc. has received written notification from me of termination or modification in such time and manner as to afford UBS Financial Services Inc. a reasonable opportunity to act on it.

I authorize UBS Financial Services Inc. at its discretion to discontinue the Bill Payment service if I fail to maintain adequate funds in the RMA or Business Services Account BSA to cover my requested payments. All Bill Payments will be initiated in accordance with this authorization and the terms and conditions governing my RMA or Business Services Account BSA. I acknowledge that the initiation of electronic funds transfers must comply with applicable U.S. law.

| | | | |
|---|---|---|---|
| Sign Here → | _____ | _____ | _____ |
| | Account Holder First Name    Last Name | Account Holder Signature | Date |
| Sign Here → | _____ | _____ | _____ |
| | Account Holder First Name    Last Name | Account Holder Signature | Date |

0155165831



©2015 UBS Financial Services Inc. All rights reserved. Member SIPC.

Exhibit  B  Page 7 of 42
Client Relationship Agreement (CRA)

7

**Intentionally Left Blank.**

Exhibit  B  Page 8 of 42
Client Relationship Agreement (CRA)

 **UBS**

**UBS Financial Services Inc.**

Account Number ___R2 90147___

# Electronic Funds Transfer Service

`FT`

**Non-UBS Financial Services Inc. Accounts**

Complete the information below for your accounts other than UBS Financial Services Inc. accounts.

The ABA routing number usually appears on the bottom of printed checks or deposit tickets. If account permission "Withdrawal from" is selected, please attach a voided check (for checking accounts) or a deposit slip (for savings accounts). If neither is available a client statement or letter on bank stationery confirming account title, account number, and ABA routing number is sufficient.

To transfer funds into a UBS Financial Services Inc. account from an external account that you have authority over, but is titled differently, a signed Letter of Authorization from all other account holders is required.

If the authorized external account is a money market account, select the "Checking" account type.

**AUTHORIZED EXTERNAL FINANCIAL INSTITUTION**

Name of Financial Institution

ABA Routing Number

Account Number

Account Type:  ☐ Savings   ☐ Checking

Financial Institution Telephone Number

Account Title/Name

External Account Permission: (select all that apply)
☐ Deposit to authorized external account   ☐ Withdraw from authorized external account

**Recurring Transfers:**   ☐ Yes   ☐ No

$

Recurring Amount ($100,000 maximum - ResourceLine)
($1,000,000 maximum – UBS Online Services)

Start Date        End Date

Start date may not be greater than 1 year from the current date and end date not greater than 30 years from current date.

Frequency: (select one)  ☐ Weekly  ☐ Bi-weekly  ☐ Monthly  ☐ Quarterly  ☐ Semi-annually  ☐ Annually

Recurring Permission: (select one) must also be selected as an external account permission above
☐ Deposit to authorized external account   ☐ Withdraw from authorized external account

**Allow UBS to Initiate Transfers to or from this External Account upon Verbal Authorization:**

By signing below, you authorize UBS Financial Services to accept verbal authorization from any person with authority over this Account to initiate "On Demand" transfers to or from the above external account identified up to $ _____ (max. amount $100,000 if left blank). This authorization will remain in effect until cancelled by a person with authority over this account. You must also select one of the External Account Permissions above.

☐ One-Time Transfer: Check the box at left if you do **not** wish to allow verbal authorization for UBS to initiate transfers to this external account and we will use this authorization as instructions for a one time transfer only.

Branch Initiated Transfers require the client's verbal consent for the branch to initiate the transfer and are limited to the External Account Permission selected for that account.

0155165832



AC-FT (Rev. 10/15)   ©2015 UBS Financial Services Inc. All rights reserved. Member SIPC.

**Exhibit B Page 9 of 42**
**Client Relationship Agreement (CRA)**

de 0250 3705 7409 11/25/2015

9

 **UBS**

**Electronic Funds Transfer Service** continued

---

**UBS Financial Services Inc. Accounts**

Complete the information below for your other UBS Financial Services Inc. accounts.

**DESIGNATED UBS ACCOUNT**

UBS Financial Services Inc. Account Number

Account Title/Name

Internal Account Permission: (select all that apply)

☐ Deposit to authorized internal account    ☐ Withdraw from authorized internal account

**Recurring Transfers:**    ☐ Yes    ☐ No

$

Recurring Amount ($100,000 maximum - ResourceLine)        Start Date        End Date
($1,000,000 maximum - UBS Online Services)

Start date may not be greater than 1 year from the current date and end date not greater than 30 years from current date.

Frequency: (select one)  ☐ Weekly  ☐ Bi-weekly  ☐ Monthly  ☐ Quarterly  ☐ Semi-annually  ☐ Annually

Recurring Permission: (select one) must also be selected as an internal account permission above

☐ Deposit to authorized internal account    ☐ Withdraw from authorized internal account

**Allow UBS to Initiate Transfers to or from this Internal Account upon Verbal Authorization:**

By signing below, you authorize UBS Financial Services to accept verbal authorization from any person with authority over this Account to initiate "On Demand" transfers to or from the above internal account identified up to $ _____ (max. amount $100,000 if left blank). This authorization will remain in effect until cancelled by a person with authority over this account. You must also select one of the Internal Account Permissions above.

☐ One-Time Transfer: Check the box at left if you do **not** wish to allow verbal authorization for UBS to initiate transfers to this internal account and we will use this authorization as instructions for a one time transfer only.

Branch Initiated Transfers require the client's verbal consent for the branch to initiate the transfer and are limited to the Internal Account Permission selected for that account.

---

**Client Authorization**

I authorize UBS Financial Services Inc. and its processing institution (the "Processing Bank") to initiate the types of transactions indicated above (including adjustments for any entries made in error) to or from my account(s) listed above, and authorize the depository(ies) named on my Authorized External Account(s) or UBS Financial Service Inc. to debit and/or credit the requested transactions to my accounts. I authorize UBS Financial Services Inc. and the Processing Bank to make changes and/or cancellations to transactions requested by me. I further acknowledge that electronic funds transfers under this authorization may be processed as automated clearing house (ACH) debit and credit entries.

I understand these instructions will remain in effect until UBS Financial Services Inc. has received written notification from me of termination or modification in such time and manner as to afford UBS Financial Services Inc. a reasonable opportunity to act on it. If I close or change any account listed above, I will promptly notify UBS Financial Services Inc. of this change.

I authorize UBS Financial Services Inc. at its discretion to discontinue the electronic funds transfer service from any accounts listed above if I fail to maintain adequate funds in such account(s) to cover my requested transfers. All electronic funds transfers will be initiated in accordance with this authorization and the terms and conditions governing my account. I acknowledge that the initiation of electronic funds transfers must comply with applicable U.S.law.

Sign Here ▶ _____        _____    _____
              Account Holder First Name      Last Name                 Account Holder Signature       Date

Sign Here ▶ _____        _____    _____
              Account Holder First Name      Last Name                 Account Holder Signature       Date

de 0250 3705 7410 11/25/2015

0155165832

AC-FT (Rev. 10/15)            ©2015 UBS Financial Services Inc. All rights reserved. Member SIPC.

10



Client Relationship Agreement (CRA)

NO POSTAGE
NECESSARY IF
MAILED IN THE
UNITED STATES

Detach Here

# BUSINESS REPLY MAIL

FIRST-CLASS MAIL     PERMIT NO. 1     UNION CITY  NJ

POSTAGE WILL BE PAID BY ADDRESSEE

ATTN: Lorenzo Esteva
UBS FINANCIAL SERVICES INC.
100 SE 2nd St STE 2500
Miami, FL 33131-9863

Exhibit  B  Page 11 of 42
Client Relationship Agreement (CRA)

# Client Information

**Denise Otero Vilarino**

## Personal Information

| | |
|---|---|
| Name | Denise Otero Vilarino |
| Citizenship | United States |
| Gender | Female |
| Date of Birth | 08/22/1977 |
| Marital Status | Married |

## Contact Information

| | |
|---|---|
| Residential Address | 3672 Bayview Rd |
| City, State,  Zip Code | Coconut Grove, FL  33133-6503 |
| Home Phone | (305) 613 - 1780 |

## Employment Information

| | |
|---|---|
| Employment Status | Work in the Home |

## Net Worth Information

| | |
|---|---|
| Annual Income | Range from $0 - $29,999 |
| Liquid Assets (cash and marketable securities) | Range from $500,000 - $999,999 |
| Net Worth (excluding primary residence) | Range from $3,000,000 - $4,999,999 |
| You have indicated that you do not derive a substantial amount of your income / wealth (over 50%) from a country outside of the United States. | |

## Investment Information

| | |
|---|---|
| Years you have held investment accounts | 20 |
| Equities | 20 |
| Bonds | 20 |
| Futures | 20 |
| Options-Buy | 20 |
| Options-Sell | 20 |
| Knowledge of investments | You have indicated you are an experienced investor in financial markets and market investments. |
| Percentage of total investable assets held at UBS | 20-40% |

## Other

| | |
|---|---|
| Own Home or Rent? | Own |

## Affiliations

| | |
|---|---|
| Affiliated with securities firms or broker/dealer? | No |
| You have indicated that you are not an employee of UBS AG, its subsidiary or affiliates. | |
| You have indicated that you are related to an employee of UBS AG, its subsidiary or affiliates. | |
| You have indicated that you are not a control person (Policy-maker, director or 10% shareholder) of a publicly traded corporation. | |

*U.S. Federal law requires us to obtain, verify and record information that identifies each person or entity that opens an Account with us. When you open an Account, we will ask for your name, street address, date of birth and a tax identification number, such as a Social Security number. We may also ask to see a driver's license or other documents that will allow us to identify you.*

*Please review and verify all of the information that you provided to us when you opened your Account.  If you have changes, corrections or additions, notify your Financial Advisor as soon as possible.*

*If you share assets with another person, the net worth figure here shows your portion only, based upon instructions you provided.*

**Investment Information:** *This section reflects answers you provided related to your investment experience, market knowledge and other assets and is used to ensure our investment recommendations are suitable for your situation.*

# Lorenzo Esteva

## Personal Information

| Name | Lorenzo Esteva |
|---|---|
| Citizenship | United States |
| Gender | Male |
| Date of Birth | 07/08/1965 |
| Marital Status | Married |
| Number of Dependents | 04 |

## Contact Information

| Residential Address | 3672 Bayview Rd |
|---|---|
| City, State, Zip Code | Coconut Grove, FL 33133-6503 |
| Home Phone | (305) 613 - 1780 |
| E-mail Address | estevlo@gmail.com |

## Employment Information

| Employment Status | Employed |
|---|---|
| Occupation | Financial Advisor |
| Occupation Industry | Finance,Insurance,Real Estate |
| Employer Name | UBS Financial Services Inc. |
| Business Address | 100 SE 2nd St Suite 2500 |
| City, State, Zip Code | Miami, FL 33131 - 2130 |

## Net Worth Information

| Annual Income | Range from $500,000 - $999,999 |
|---|---|
| Liquid Assets (cash and marketable securities) | Range from $500,000 - $999,999 |
| Net Worth (excluding primary residence) | Range from $3,000,000 - $4,999,999 |

You have indicated that you do not derive a substantial amount of your income / wealth (over 50%) from a country outside of the United States.

## Investment Information

| Years you have held investment accounts | 30 |
|---|---|
| Equities | 30 |
| Bonds | 30 |
| Futures | 30 |
| Options-Buy | 30 |
| Options-Sell | 30 |
| Knowledge of investments | You have indicated you are an experienced investor in financial markets and market investments. |
| Percentage of total investable assets held at UBS | 20-40% |

## Other

| Own Home or Rent? | Own |
|---|---|

## Affiliations

| Affiliated with securities firms or broker/dealer? | No |
|---|---|

U.S. Federal law requires us to obtain, verify and record information that identifies each person or entity that opens an Account with us. When you open an Account, we will ask for your name, street address, date of birth and a tax identification number, such as a Social Security number. We may also ask to see a driver's license or other documents that will allow us to identify you.

Please review and verify all of the information that you provided to us when you opened your Account. If you have changes, corrections or additions, notify your Financial Advisor as soon as possible.

If you share assets with another person, the net worth figure here shows your portion only, based upon instructions you provided.

**Investment Information:** This section reflects answers you provided related to your investment experience, market knowledge and other assets and is used to ensure our investment recommendations are suitable for your situation.

Exhibit  B  Page 14 of 42
Client Relationship Agreement (CRA)

You have indicated that you are an employee of UBS AG, its subsidiary or affiliates.

You have indicated that you are not related to an employee of UBS AG, its subsidiary or affiliates.

You have indicated that you are not a control person (Policy-maker, director or 10% shareholder) of a publicly traded corporation.

Exhibit  B  Page 15 of 42
Client Relationship Agreement (CRA)

# Account Information

## RMA Domestic Joint Ten W/Rights Surv

### Your Account

| | |
|---|---|
| Account Number | R2 90147 |
| Account Title | Lorenzo Esteva<br>Denise Otero Vilarino JTWROS |
| Account Address | 3672 Bayview Rd |
| City, State zip | Coconut Grove, FL 33133-6503 |
| Cards and Checks for this account, if requested, will be mailed to this address: | 3672 Bayview Rd<br>Coconut Grove, FL 33133-6503 |
| Primary Account Holder | Lorenzo Esteva |
| Joint Owner W/Rights Of Sur | Denise  Otero Vilarino |
| Disclosure of Beneficial Ownership | UBS will not disclose your name, address and security position to issuers of any securities held in your Account. |
| Margin | Yes |

**You have agreed that the Margin Agreement in the Completing Your Account Opening Process package governs your use of margin in this account and all other accounts you have now or any accounts that you may open in the future. As described in the Margin Agreement, certain securities in your Account may be loaned to UBS or to other persons or entities.**

| | |
|---|---|
| Cost Basis Method | First In,First Out |

### Features and Services

| | |
|---|---|
| Checking | VISA Debit (No Rewards points) |
| VISA Credit (W/Rewards points) | EFT Web Incoming/Outgoing |
| Bill Pay Web | Premier- RMA / BSA |

### Account Objectives and Risk Profile

| | |
|---|---|
| Account Risk Profile<br>   *Your answers to our profiling questions:* | Aggressive/Speculative |
| Risk Tolerance | High Risk |
| Investment Objective | Produce a combination of income and capital appreciation |
| Risk/Return Objectives | Higher Fluctuations, Higher Returns |
| Investment Time Horizon | Longer than 10 years (through several market cycles) |
| Short-Term Liquidity Needs | No |
| Sweep Account Election | |
| Primary Sweep Fund | UBS BANK USA DEPOSIT ACCOUNT |
| Sweep Cap Election | Yes |
| Cap Amount | $500000.00 |
| Secondary Sweep Fund | UBS AG DEPOSIT ACCOUNT |

U.S. Senior Political Affiliation: You have indicated that no account holder, an authorized signatory, beneficial owner, trustee, power of attorney, or other individual with authority to effect transactions, or any of their immediate family members or close associates is a Current U.S. Political Official.

Non-U.S. Senior Political Affiliation: You have indicated that no account holder, an authorized signatory, beneficial owner, trustee, power of attorney, or other individual with authority to effect transactions, or any of their immediate family members or close associates is a Current or Former non-U.S. Political official or non-U.S. Religious Group/Organization or Senior/Influential representative of a non-U.S. Religious Group/Organization.

*Please review the information about each of your accounts and notify your Financial Advisor immediately if you have any changes or corrections.*

*For more information, please refer to the UBS Deposit Account Sweep Program Disclosure Statement.*

***Please note:*** *the account risk profile and investment objective below are specific **only** to this account: other accounts may have different account risk profiles and investment objectives.*

*Your **Account Risk Profile** for this particular account is defined as:*
***Aggressive:*** *Willing to accept high risk to principal and high volatility to seek high returns over time.*
*Different accounts may have different risk profiles*

*Your **Investment Objective, Produce a Combination of Income and Capital Appreciation**: Investments seeking both the generation of income and growth of principal.*

*A senior political official is defined as a President or Vice President, Cabinet Member, Supreme Court Justice, member of the Joint Chief's Staff, Member of Congress or a Parliament, Chairperson, Head or Senior Leader of a major religious organization, or the like.*

## Source of Funds in the Account

You have indicated the following as the source of funds for this account:

Income from current or previous employment or business

## Electronic Delivery Features

Electronic Delivery of Shareholder Communications:  You have elected to receive shareholder communications via electronic format in this UBS account.  Please refer to Client Relationship Agreement for Terms and Conditions of this service.

| E-mail Address | estevlo@gmail.com |
|---|---|

## UBS Credit Card Profile (With Rewards points)

| Applicant | LORENZO ESTEVA |
|---|---|
| Co-Applicant | DENISE OTERO VILARINO |
| UBS Card Program | UBS Visa Signature Credit Card |
| Card Security Contact Phone Number (Applicant) | (305) 613-1780 |
| Card Security Contact Phone Number (Co-Applicant) | (305) 613-1780 |

## UBS Debit Card Profile (No Rewards points)

| Applicant | LORENZO ESTEVA |
|---|---|
| Co-Applicant | DENISE OTERO VILARINO |
| Card Security Contact Phone Number (Applicant) | (305) 613-1780 |
| Card Security Contact Phone Number (Co-Applicant) | (305) 613-1780 |

Exhibit  B  Page 17 of 42
Client Relationship Agreement (CRA)

**Intentionally Left Blank**

# UBS Client Relationship Agreement

## Introduction

At UBS, we understand that we succeed only when our clients succeed. With that in mind, we provide a customized approach to wealth management, built on your personal relationship with your Financial Advisor and shaped by an understanding of your needs and aspirations.

Known as the Client Relationship Agreement, this document outlines the terms and conditions of your relationship with us. By maintaining your Accounts at UBS, you agree to these terms and conditions and the other agreements and disclosures we refer to here. If signatures are required, please return the signed signature page in the enclosed envelope.

To confirm that our records are complete, we will send you a record of the information you give us after you open a new Account. Please review the Client Information and Account Information pages of the Completing Your Account Opening Process package and notify us promptly if there are any updates or corrections.

**Please note:** this Client Relationship Agreement **applies to all of your Accounts at UBS**, including any Accounts you may already have with us and Accounts you may open in the future. You will not receive another copy of the Client Relationship Agreement or the Agreements and Disclosures unless there are updates and amendments, or if we require your signature on this Agreement when you open Accounts in another capacity.  Some of the information in this document and the other agreements and disclosures we send you may not apply to you now. Please retain these documents for future reference because they contain important information if you decide to add services or open new Accounts.

The terms and conditions in this Client Relationship Agreement apply to all Accounts you open with UBS Financial Services Inc. or UBS Financial Services Incorporated of Puerto Rico or any other introducing broker-dealer that has a clearing agreement with UBS Financial Services Inc. In addition, we will send you other agreements and disclosures for the services you choose when you open your account, as well as features you may add in the future. We refer to all these documents, including any amendments, as the Agreements and Disclosures booklet.

Your acceptance of your initial Client Relationship Agreement will serve as your agreement to the terms and conditions governing any new Accounts, features or services. Deposits of cash or securities and your continued use of your UBS Accounts constitute your agreement to all of the terms and conditions applicable to your Accounts. If you do not agree to the terms and conditions, you may cancel a feature or service or close your account. Your UBS Accounts do not permit you to engage in any transactions involving a commodity interest unless and until you complete additional agreements with us specifically permitting those transactions.

As a UBS client, you may decide to open additional Accounts or take advantage of services and account features in the future.  With some exceptions, you will be able to do so without signing additional documents or agreements. Upon approval of your accounts and services, we will confirm your requests in writing and provide any relevant agreements and disclosures you have not already received.  Any authorization of features and services you give us will remain in effect until a reasonable time after you notify us to terminate the feature or service.

It is important to note that when we act as your broker-dealer, we do not enter into a fiduciary relationship with you, regardless of the fee structure you select. Except in special circumstances, we are not held to the same legal standards that apply when we have a fiduciary relationship with you, as we do when providing investment advisory services. We will effect transactions for your brokerage Accounts only as instructed by you, and neither UBS Financial Services Inc. nor your Financial Advisor will have any discretion over your Accounts.

*This column contains important definitions applicable to our Agreement with you*

*"Accounts" refers to all securities accounts, brokerage accounts, margin accounts, deposit accounts, or other accounts you open with UBS Financial Services Inc. or UBS Financial Services Incorporated of Puerto Rico now or in the future.*

*We refer to the Client Relationship Agreement together with all other agreements and disclosures that we make available to you, and any amendments, as our "Agreement" with you for your Accounts.*

*We also refer to the "Completing Your Account Opening Process" package, which includes Signature Pages, optional forms and other required documents.*

*If a Signature Page is included, please have all named account holders sign the Signature Page and return it to us in the enclosed envelope.*

*"You," "your" and "yours" refer to you as a client of UBS.*

*"UBS," "we," "us," "our" and "ours" refer to UBS Financial Services Inc. and unless we indicate otherwise in this Agreement, its successor firms, subsidiaries, correspondents and Affiliates, including its parent company, UBS AG.*

*"Affiliates" refers to  UBS Financial Services Incorporated of Puerto Rico (which clears through UBS Financial Services Inc.), UBS Bank USA, UBS Credit Corp., UBS Trust Company, N.A. and their insurance agency affiliates and subsidiaries and all other subsidiaries and affiliates.*

de 0250 3710 7419 11/25/2015

### Representations

By signing a Client Relationship Agreement, you make the following representations:

- You are at least 18 years old or have reached the age of majority according to the laws of the state in which you reside and the laws of the State of New York.

- You have notified us if you, your spouse or any beneficial owner of the Account(s) are or become employed by any of the following: a member firm of FINRA or other exchange (including broker/dealer subsidiary of a bank, insurance company or other financial institution), or securities or commodities exchange or self-regulatory organization or any of their affiliated organizations or UBS's independent auditor. You agree to notify us promptly of any changes.

- No one other than you, and the individuals identified to UBS in connection with the opening of the Account, has or will have an interest in your Account unless you notify us in writing and UBS Financial Services Inc. agrees to continue to carry the Account.

- All of the personal and financial information you have supplied to UBS is true and accurate, and you will notify UBS promptly of any material changes, particularly the information regarding your residence, financial situation, investment objectives or tax status.

- You understand that UBS provides financial and investment services only and does not provide legal or tax advice.

- You represent that all reporting and tax associated obligations have been and will continue to be fulfilled by you and all beneficial owners, as applicable, with respect to any assets deposited in the Accounts.

- If you are acting as executor, trustee, conservator, guardian or custodian:

  – You understand that you are a fiduciary on behalf of the beneficial owners of the Account and that you have a duty to use the services and features provided through the Account for the benefit of the beneficial owners of the Account and not for your own benefit.

  – You acknowledge that you will make an independent determination that any activity in the Account is suitable, complies with any investment restrictions or guidelines under applicable law and is appropriate for the beneficial owners and that the compensation we receive is reasonable.

  – You understand and agree that this determination is solely your responsibility and not ours.

*Please review and verify the information about you and your Accounts in the "Completing Your Account Opening Process" package. If you have questions, changes or corrections, call your Financial Advisor.*

### Fees and Charges

As a client of UBS, you agree to pay all fees and charges relating to your accounts for any transactions or services you receive from us, such as annual service fees, brokerage fees for securities transactions, fees for specific services you request and fees or charges by a third party that we incur in the course of providing services to you.

All fees and charges are subject to change at any time. Fees and charges will be charged to your accounts and may be satisfied, along with any other amounts you owe us, from free credit balances, margin and other assets in any of your accounts. We may sell assets in your Account to satisfy debit balances for any amounts due, including those resulting from unpaid fees and charges.

*Please refer to the Fees and Charges section of the Agreements and Disclosures booklet or more information about fees and charges. If you have questions, please contact your Financial Advisor.*

de 0250 3710 7420 11/25/2015

### Individual Retirement Accounts

The Agreements and Disclosures booklet contains the UBS IRA Custodial Agreements and the IRA Disclosure Statements that apply to any Traditional, Roth, SEP or SIMPLE Individual Retirement Accounts (IRAs) you open with us now or in the future. If we make changes to the UBS IRA Custodial Agreement and the IRA Disclosure Statement we will send you updated documents, and you agree to be subject to those updated terms and conditions.

According to the UBS IRA Custodial Agreements, UBS Financial Services Inc. is named as the custodian of your IRA when we accept the Account. At your death, the beneficiary or beneficiaries whose name(s) are shown on the Account Information pages of the Completing Your New Account Process package will become entitled to your IRA.

Beneficiaries must be named in writing. Your written designation may apply to future accounts, and in that case, we will confirm your designation in the Completing Your Account Opening Process package. If you do not designate beneficiaries, or your beneficiary designation does not effectively dispose of the assets, your beneficiary with respect to the IRA or any part of the IRA not effectively disposed of, will be your surviving spouse, or your estate if you do not have a surviving spouse.

You may be charged a Custodial Account fee in connection with this IRA.

If this IRA account is funded via transfer from another financial institution, you represent that all transfers to this account originate from (1) an IRA in the same name and of the same type (e.g. traditional, Roth), (2) an inherited IRA in the same name and of the same type, or (3) a qualified plan account which you were entitled to rollover to an IRA.

You agree that if you roll over assets of a qualified plan to a UBS IRA now or in the future, you are responsible for reviewing the options available and evaluating the investment and non-investment considerations described in the enclosed IRA Rollover Disclosure. You are responsible for reviewing, understanding and making an independent decision with respect to the fees and costs associated with a UBS IRA.  You also understand that none of the information provided to you by UBS or its employees about rolling over to an IRA is provided as part of any existing fiduciary relationship to your employer's plan under ERISA and that neither UBS nor its employees act as an ERISA fiduciary in supplying such information.

*The features and fees of your IRA are fully described in the Agreements and Disclosures booklet.*

*Please note: UBS does not extend margin for Individual Retirement Accounts.*

*Employers with a SEP IRA or SIMPLE IRA plan for their businesses must sign a separate plan document. We accept any approved plan documents, known as prototypes, whether they were produced by UBS, an IRS model or a document from another provider. If you would like to use a SEP IRA prototype, please ask for a copy of the SEP IRA Plan or SIMPLE IRA Plan prototype document from your UBS Financial Advisor.*

### Accounts with Cash Management Features

The Agreements and Disclosures booklet contains the terms and conditions that apply to the cash management features you may select.  All requests to enroll in cash management features are subject to approval. We consider your continued use of your Account as your acceptance of the applicable terms and conditions.

There are important differences in the cash management features and other services that are available to U.S. residents through UBS accounts and those that are available to clients who reside outside the U.S. For example, we have different sweep programs for uninvested cash and different Card programs for these accounts. This agreement and the Agreements and Disclosures booklet describe which programs apply to which types of accounts.

*Verbal Authorization to Upgrade or Add Cash Management Features to an Account*

For any account you have with us now or may open in the future, we may accept verbal requests to upgrade or add cash management features to your Account. Generally, we permit any authorized person to provide verbal instructions to upgrade or add services to your Account unless you instruct us otherwise. In some circumstances, we may ask you or another person who is named on the account to sign additional documents or provide additional information for those additional features. We will provide you updated terms and conditions for the services you request if we have not already sent them to you or another owner of the Account. We consider your use of the Account as your acceptance of the applicable terms and conditions.

*UBS offers a variety of accounts with cash management features, including the Resource Management Account® (RMA), Business Services Account BSA® (BSA) and International Resource Management Account® (IRMA®).*

*Cash management features available for eligible accounts include:*
- *Check writing*
- *Debit cards*
- *Credit cards*
- *Rewards programs*
- *Bill Payment*
- *Electronic Funds Transfer*
- *Margin loans*

*Sweep Options" refers to the options made available by UBS for the*

Exhibit  B  Page 21 of 42
Client Relationship Agreement (CRA)

### Our Sweep Options and Your Sweep Election

As a service to you, we offer options for the automatic investment or deposit of available cash balances ("sweep") in your Accounts. Current Sweep Options include the UBS Bank Sweep Programs and the Sweep Funds. The available Sweep Options and their features, and the eligibility of an Account for a specific Sweep Option varies by the type of Account you open, the services you select, the type of entity you are and your country of residence.

We may change or discontinue our sweep service at any time, including changing the terms and conditions of the sweep service and adding or discontinuing specific Sweep Options. We may establish criteria for Sweep Options offered to different clients, including, but not limited to, establishing minimum asset requirements for clients to qualify for specific Sweep Options.

By signing this Client Relationship Agreement you authorize and direct us to deposit or invest your available cash balances on each business day in your Sweep Option and to withdraw your funds from, or liquidate your shares in your Sweep Option, as described in this section and in the General Terms and Conditions in the Agreements and Disclosures booklet, and any amendments. As set forth in the Introduction above, such authorization applies to all of your Accounts at UBS, including any Accounts you may open in the future.

If we have not received such authorization from you, under applicable law we may not be permitted to begin sweeping your available cash balances into your Sweep Option or, if we have begun sweeping your available cash balances, we may be required to stop. If available cash balances in your Account are not swept for any reason, available cash balances will not be invested, and we are not required to pay you interest on cash balances in your Account.

Please refer to the UBS Bank Sweep Programs Disclosure Statement for a description of the eligibility requirements for the UBS Bank Sweep Programs. If your Account is not eligible for the UBS Bank Sweep Programs, you may select an available Sweep Fund as the Sweep Option for your Account.

For Accounts eligible for one of the UBS Bank Sweep Programs, unless you are eligible for and select an available tax-advantaged Sweep Fund, your Sweep Option will be one of the UBS Bank Sweep Programs.

In general, most clients with a Resource Management Account® (RMA®), Individual Retirement Account (IRA), Basic Investment Account, Business Services Account® (BSA®), Coverdell Education Savings Account and certain Investment Advisory Accounts will be eligible for one of the UBS Bank Sweep Programs. Eligibility is based primarily upon the type of client. Most non-business clients and employee benefit plans qualified under Section 401(a) or Section 403(b)(7) of the Internal Revenue Code of 1986, as amended, or under any other employee retirement or welfare plan subject to the Employee Retirement Income Security Act of 1974, as amended (ERISA) (Plans) are eligible for the Deposit Program. In cases where a participant in a Plan has established a Securities Account for purposes of participation in the Plan (each a Plan Participant), the Plan Participant will be eligible for the Deposit Program. Most business clients are eligible for the Business Program.

### The UBS Bank Sweep Programs

Through each of the UBS Bank Sweep Programs, available cash balances in each eligible Account are automatically deposited into deposit accounts at Bank USA up to the Bank USA Sweep Cap. Available cash balances in excess of the Bank USA Sweep Cap will be automatically swept without limit to your Secondary Sweep Option.

Unless you select an available Sweep Fund, the Secondary Sweep Option for eligible Accounts other than Investment Advisory Accounts is deposit accounts at AG Stamford Branch. Investment Advisory Accounts will not sweep to the AG Stamford Branch; instead

*automatic investment or deposit ("sweep") of available cash balances in your Account. Sweep Options include the UBS Bank Sweep Programs, the Sweep Funds, the Puerto Rico Short Term Investment Fund, the International Deposit Account Sweep Program and any other sweep investments we may make available from time to time for eligible Accounts.*

*"Sweep Funds" refers to one or more of the UBS money market funds made available as a Sweep Option. Sweep Funds are described in the respective prospectuses for the UBS RMA Funds, UBS Cashfund, UBS Retirement Money Market Funds and the UBS Select Capital Money Market Funds.*

*The "UBS Bank Sweep Programs" collectively refers to the UBS Deposit Account Sweep Program (the "Deposit Program") and the UBS Business Account Sweep Program (the "Business Program") as more fully described in the UBS Bank Sweep Programs Disclosure Statement.*

*UBS Bank USA (Member FDIC) ("Bank USA"),is an FDIC-member bank affiliate of UBS.*

*UBS AG, Stamford Branch ("AG Stamford Branch") is a US branch of UBS AG, a Swiss Bank that is the parent of UBS Financial Services Inc. and UBS Financial Services Incorporated of Puerto Rico.*

*For clients other than Plans and Plan participants, the "Bank USA Sweep Cap" is $250,000 per Securities Account owner. For Plans and Plan participants, the Bank USA Sweep Cap is $250,000 per Securities Account.*

*Please refer to the UBS Bank Sweep Programs Disclosure Statement for important information about how the UBS Bank Sweep Programs work, how the Bank Sweep Cap is determined, eligibility, interest rates, withdrawal limits, FDIC insurance and your relationship with UBS, Bank USA and AG Stamford Branch. You*

de 0250 3711 7422 11/25/2015

Exhibit  B  Page 22 of 42
Client Relationship Agreement (CRA)

the Secondary Sweep Option for Investment Advisory Accounts will be an available Sweep Fund.

**Funds in deposit accounts at AG Stamford Branch are not eligible for FDIC insurance or protection by SIPC.**  Sweep Funds are not FDIC-insured, not guaranteed by a bank, are sold by prospectus only and may lose value.

Deposits held at Bank USA through the Business Program are subject to monthly withdrawal limits, as described in the UBS Bank Sweep Programs Disclosure Statement.  If your withdrawals in a month reach the limit, all funds on deposit through the Business Program will be withdrawn from Bank USA and transferred into your Secondary Sweep Option and available cash balances will sweep to your Secondary Sweep Option for the remainder of the month.  These funds, up to the Bank USA Sweep Cap, will be transferred back to Bank USA on the first business day of the following month.

**FDIC Insurance Coverage and Limitations:** If you have more than one Account that sweeps to Bank USA, the amount deposited at Bank USA may exceed the amount covered by FDIC insurance (currently $250,000 per insurable capacity). **You are responsible for monitoring the total amount of deposits that you have with Bank USA to determine the extent of FDIC deposit insurance coverage available to you.** Please refer to the UBS Bank Sweep Programs Disclosure Statement for more detailed information regarding the UBS Bank Sweep Programs and FDIC insurance.

### Alternatives to the UBS Bank Sweep Programs

With the exception of tax-advantaged Accounts and Basic Investment Accounts, if you are eligible to participate in one of the UBS Bank Sweep Programs, but do not wish to have your available cash balances deposited with Bank USA, you may elect at any time to have your available cash balances swept without limit to a tax-advantaged Sweep Fund or, for Puerto Rico residents only, the Puerto Rico Short Term Investment Fund, Inc.

The following tax-advantaged Sweep Funds currently are available:

- UBS RMA Tax-Free Fund Inc.
- UBS RMA California Municipal Money Fund
- UBS RMA New York Municipal Money Fund
- The Puerto Rico Short Term Investment Fund, Inc.
- UBS Select Tax-Free Capital Fund (subject to minimum asset requirements)

State-specific municipal funds are intended for residents of those states only. The Puerto Rico Short Term Investment Fund, Inc. is offered exclusively to Puerto Rico residents as defined in the fund's prospectus. The Puerto Rico Short Term Investment Fund is not a money market fund registered under the U.S. Investment Company Act of 1940, does not comply with rules applicable to U.S. registered funds, presents a higher degree of risk than those funds, and is for Puerto Rico residents holding accounts with UBS Financial Services Incorporated of Puerto Rico only. The Puerto Rico Short Term Investment Fund and the Sweep Funds are sold by prospectus only, and **are not FDIC-insured, not guaranteed by a bank, and may lose value.**

If your Account is tax-advantaged, or is a Basic Investment Account, whether tax-advantaged or not, you are not eligible to select a tax-advantaged Sweep Fund as a Sweep Option. Tax-advantaged Accounts include, but are not limited to, Accounts of Plans, Plan Participants and IRAs. If your tax-advantaged Account or Basic Investment Account is not an Investment Advisory Account, and you choose not to participate in a Bank Sweep Program, available cash balances will not be invested and we are not required to pay you interest on cash balances in your Account. If your tax-advantaged Account or Basic Investment Account is an Investment Advisory Account, available cash balances must be swept through a Bank Sweep Program.

### Changing Your Sweep Option

You may change your sweep election to an available alternative Sweep Option at any time. By instructing us to change your sweep election, you are authorizing and directing us to

*should review the Disclosure carefully.*

*"Secondary Sweep Option" refers to deposit accounts at AG Stamford Branch or one of the available Sweep Funds.*

*"Investment Advisory Account" refers to an Account enrolled in any of the following investment advisory programs: Managed Accounts Consulting Program, Portfolio Management Program, ACCESS, Managed Portfolio Program, UBS Strategic Wealth Portfolio, UBS Strategic Advisor, and Private Wealth Solutions and such other programs as UBS may add from time to time.*

*Please refer to the section "International Accounts" for information about the sweep option for the International RMA.*

Exhibit  B  Page 23 of 42
Client Relationship Agreement (CRA)

redeem your Sweep Fund shares, or withdraw funds from one of the UBS Bank Sweep Programs, and transfer the funds to your new Sweep Option. You may change your sweep election by contacting your Financial Advisor.

For additional information regarding program availability and Account eligibility, please refer to the UBS Bank Sweep Programs Disclosure Statement and the UBS International Deposit Account Sweep Program Disclosure in the Agreements and Disclosures booklet, and to the prospectuses for the Sweep Funds and the Puerto Rico Short Term Investment Fund.

**Institutional Sweep Funds and Automatic Exchanges**

We may offer Institutional Sweep Funds as Sweep Options or Secondary Sweep Options for clients (except for Plans and IRAs in investment advisory programs) who meet certain minimum asset thresholds. Current eligibility criteria may be obtained from your Financial Advisor. UBS may change the eligibility criteria at any time in its discretion without notice to you. Institutional Sweep Funds will generally offer a higher yield than other Sweep Funds, though there is no guarantee that the yield will be, or will remain, higher.

*"Institutional Sweep Funds" refers to one or more of the UBS money market funds made available by UBS to clients who meet certain minimum asset thresholds.*

If you are eligible for an Institutional Sweep Fund as either your Sweep Fund or your Secondary Sweep Option for one of the Bank Sweep Programs, we will liquidate your shares in your current Sweep Fund or your Secondary Sweep Option, as applicable, and purchase shares in the Institutional Sweep Fund with the same investment objectives without direction from you. Thereafter, your Sweep Fund or Secondary Sweep Option, as applicable, will be the Institutional Sweep Fund. Once an Account's Sweep Option or Secondary Sweep Option, as applicable, is an Institutional Sweep Fund and a first purchase has been made into the Fund, that Institutional Sweep Fund will remain the Account's Sweep Option or Secondary Sweep Option even if the Account's Marketing Relationship assets cease to meet the minimum asset thresholds for that Institutional Sweep Fund.

*Clients other than Plans and Plan Participants*

Your eligibility for the Institutional Sweep Funds will be determined at the end of each month, based on the value of your Marketing Relationship assets as determined in the sole discretion of UBS. If the value of your Marketing Relationship assets reaches the minimum asset threshold at any time other than the end of the month, you will not be eligible for an Institutional Sweep Fund.

*Plans and Plan Participants*

A Plan's eligibility for the Institutional Sweep Funds will be determined at the end of each month, based on the value of the Plan's QP Relationship assets, as determined in the sole discretion of UBS. A Plan Participant's eligibility for the Institutional Sweep Funds will be determined at the end of each month, based on the greater of the value of the Plan's QP Relationship assets and the Plan Participant's Marketing Relationship assets, both as determined in the sole discretion of UBS. If the value of a Plan's QP Relationship assets or a Plan Participant's Marketing Relationship assets reaches the minimum asset threshold at any time other than the end of the month, the Plan or Plan Participant will not be eligible for an Institutional Sweep Fund.

*"QP Relationship assets" is defined in the UBS Bank Sweep Programs Disclosure Statement.*

de 0250 3712 7424 11/25/2015

Exhibit  B  Page 24 of 42
Client Relationship Agreement (CRA)

### Check Writing

Many UBS accounts incorporate a check writing feature. If you choose this feature for your account, you authorize us and our Check Provider to honor checks that bear your signature(s) and unsigned drafts that are presented on the basis of separate written authorization from you to the payee. These checks may be used only in conjunction with your accounts and only up to the account's "Withdrawal Limit" as defined in the General Terms and Conditions in the Agreements and Disclosures booklet. We will deduct funds from your Accounts and reimburse the Check Provider in federal funds when checks or drafts are presented to the Check Provider. We may delay or deny payment if there are insufficient available assets in your Account to cover payment on the day you write the check or authorize the draft through the day on which we deduct funds from your accounts to pay the check or draft.

*"Check Provider" is the provider and processor we have appointed to handle payment of your checks and drafts. We reserve the right to change check providers from time to time.*

### Bill Payment and Electronic Funds Transfer Services

Many UBS accounts incorporate the Bill Payment and Electronic Funds Transfer services. If you enroll in these services, you authorize UBS and its processing bank to effect the types of transactions described in the Bill Payment and Electronic Funds Transfer Service Agreement. This service agreement also applies to other electronic transfers to or from your Accounts, including transfers made with UBS CashConnect feature and certain payments made through the Automated Clearing House ("ACH") system, even if you do not enroll in this service.

*The Bill Payment and Electronic Funds Transfer Service Agreement is located in the Agreements and Disclosures booklet.*

*Bill payments are only available to payees located in the U.S.*

*Transfers through the ACH system are only available to and from accounts at financial institutions and banks within the U.S.*

### UBS Visa Debit Card for RMA or BSA

Brokerage accounts with cash management features include the UBS Visa Debit Card (Card). If you choose this feature either verbally or in writing, you will be issued one or more Card(s) by the Card Issuer. UBS or the Card Issuer will complete any transactions you initiate using the Card(s). The Card Issuer will approve transactions up to your account's "Withdrawal Limit," as described in the Agreements and Disclosures booklet.

You agree to maintain sufficient available assets in your account to make payment in full, and transactions may be denied if there are insufficient assets in your account to make full payment for any Card transactions as they are processed. As your Card cash withdrawals are processed, we will deduct funds from your Account to reimburse the Card Issuer. Once each calendar month and effective August 1, 2015 once each business day, we will deduct from your Account the amount of purchases made with the Card that have been received by the Card Issuer but not yet deducted from your Account. The Card Issuer may suspend or cancel Cards if there are insufficient assets to cover transactions. Your use of the Card constitutes your agreement to the terms and conditions in the UBS Visa Debit Card Cardholder Agreement, which is included in the Agreements and Disclosures booklet.

*"Card Issuer" means UBS Bank USA, its successors and assigns, or the issuer of UBS Cards we appoint in our sole discretion.*

*Your UBS Visa Debit Card(s) will be mailed to you under separate cover after your Account has been approved.*

### UBS Credit Card for RMA or BSA

You may apply for a UBS Visa Signature credit card or UBS Preferred Visa Signature credit card (Credit Card) either verbally or in writing. If your application is approved by the Card Issuer, you will be issued one or more Credit Cards. We will bill transactions made with your Credit Card separately from your eligible brokerage account.  You may pay your Credit Card balance automatically each month from your eligible brokerage account, or you may pay the bill from other sources or allow a balance to revolve. The Credit Card terms and conditions describes rates, fees and other costs for the Credit Card. The Card Issuer will issue and manage your Credit Card according to Utah law and the UBS Credit Card Cardholder agreement (Credit Card Agreement). The Card Issuer will include the Credit Card Agreement with your Credit Card.

Your use of the Credit Card constitutes your agreement to the terms and conditions in the Credit Card Agreement, which may change occasionally. The Credit Card is not subject to the General Terms and Conditions of this UBS Client Relationship Agreement. To fulfill

*Your UBS Credit Card(s), if approved for issuance by the Card Issuer, will be mailed to you under separate cover after your Account has been approved.*

***Express Delivery***: *If you are approved for an account and your card was requested next day delivery, your card will be sent the next day after your account is opened if the request is made before 3:00 p.m. Eastern time of that day. A signature is required for Express Delivery.*

Exhibit  B  Page 25 of 42
Client Relationship Agreement (CRA)

your application for a Credit Card, we will share the personal information the Card Issuer requires to open your Credit Card Account, and we share your personal information such as application data, approval status and transaction information on a regular basis to update your UBS monthly account statement and our records.

When you request a Credit Card, the Card Issuer will obtain a credit report as part of your application and after it establishes your Credit Card account to administer your Credit Card account and report its credit experience with you to others. At your request, the Card Issuer will provide the name and address of each consumer reporting agency from which it obtained a report about you. After your Credit Card account is open, you will have the opportunity to select how the Card Issuer can use or share information about you for marketing or Credit Card account maintenance purposes.

Any disputes you may have with the Card Issuer will be resolved by binding Arbitration. For more information regarding Arbitration please consult the UBS Credit Card Agreement.

By requesting Credit Card, you agree with the following statements:

- I (we) am at least 18 years old and a permanent resident of the United States.

- I (we) have reviewed and agree to the Important Information about the UBS Credit Card Account Terms and Conditions that was provided with this Client Relationship Agreement.

- All information provided to UBS and the Card Issuer was truthful and complete.

### International Accounts

Please note: The International RMA and certain of its cash management features and other services are not available in all countries and may be changed at any time.

In connection with your certification regarding purchases made in reliance on Regulation S, including off-shore mutual fund purchases, the definition of a U.S. Person is 1) any resident of the United States; 2) any partnership or corporation organized in or under the laws of the United States; 3) any estate or trust in which the executor, administrator or trustee is a U.S. person and/or if the income from the estate or trust is subject to U.S. federal income taxation (regardless of the source of the income); 4) any corporation, partnership, estate, trust or other entity that is directly or indirectly controlled by one or more of the above categories of U.S. Persons; 5) any agency or branch of a foreign entity that is located in the U.S.; 6) any non-discretionary account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. Person; 7) any discretionary account (other than an estate or trust) held by a dealer or fiduciary that is a U.S. Person, not including those held for the benefit of a non-U.S. Person; 8) certain partnerships or corporations that are organized or incorporated under the laws of any non-U.S. jurisdiction that have formed principally for the purpose of investing in securities not registered under the U.S. Securities Act of 1933; and 9) any other person or entity considered a U.S. Person for purposes of Regulations under the Securities Act of 1933.

### International Deposit Account Sweep Program

The Sweep Option for International Accounts is generally the UBS International Deposit Account Sweep Program (IDA). The IDA is an interest-bearing account maintained by UBS AG at the Cayman Islands Branch where funds are invested into short-term deposits.  If you are eligible and choose to participate in the IDA sweep program, free cash balances in your Accounts are automatically deposited into a demand deposit account at the New York Branch of UBS AG, from which funds are then swept and re-deposited each business day into an overnight deposit account at the Cayman Islands branch of UBS AG.  As your agent, UBS Financial Services Inc. will make the necessary withdrawals from the New York deposit account to satisfy debits or charges in your Account in accordance with the General Terms and Conditions. You may choose to withdraw from the IDA Program at any time, however, your free cash balances in your Account at UBS Financial Services Inc. will not earn interest or dividends. Funds on deposit in the accounts at the New York and the Cayman Islands branches of UBS AG are not eligible for federal deposit insurance from the Federal Deposit Insurance Corporation (FDIC).

*The information contained in these disclosures is accurate as of 04/04/2012 and may change after this date.*

*The UBS Credit Card is not available with the International RMA.*

*The Credit Card terms and conditions describe the fees for the UBS Credit Card.*

*The features and fees of your International Resource Management Account are more fully described in the Agreements and Disclosures booklet.*

Exhibit  B  Page 26 of 42
Client Relationship Agreement (CRA)

A full description of the IDA Sweep Program is included in the Agreements and Disclosures Booklet. At times, we may update or modify the terms of the IDA Sweep Program and/or change the Sweep Options we make available.

*UBS  Visa Debit Card®*

The International RMA includes the UBS Visa Debit Card (Card). If you are eligible for the Card under applicable law and UBS policies and you request this feature either verbally or in writing, you will be issued one or more Card(s) by the Card Issuer. UBS or the Card Issuer will complete any transactions you initiate using the Card(s). Your use of the Card constitutes your agreement to the terms and conditions in the UBS Visa Debit Card Cardholder Agreement that is included in the Agreements and Disclosures booklet.

The Card Issuer will approve transactions up to your account's "Withdrawal Limit," as described in the Agreements and Disclosures booklet. You agree to maintain sufficient available assets in your account to make payment in full and understand that transactions may be denied if there are insufficient assets in your account to make full payment for any Card transactions as they are processed.

As your Card cash withdrawals are processed, we will deduct funds from your Account to reimburse the Card Issuer. Once each calendar month and effective August 1, 2015 once each business day, we will deduct from your Account the amount of purchases made with the Card that have been received by the Card Issuer but not yet deducted from your Account. The Card Issuer may suspend or cancel Cards if there are insufficient assets to cover transactions.

### Insurance Accounts

As a service to clients, we also offer accounts to maintain or permit the purchase of insurance products and services. By signing the Signature Page for your non-brokerage insurance account, you accept the Client Relationship Agreement and the other documents referred to here, and as a result, you may be able to open brokerage accounts with us in the future without having to sign additional agreements.

### Joint Accounts

For joint accounts, each person or entity named on the Account has full power and authority over the Account, and the account holders are jointly and severally liable for all obligations with respect to the Account. Please refer to the "Joint Accounts" section of the General Terms and Conditions for more information about the terms and conditions that apply to joint accounts.

When we open additional joint accounts for the same account holders, we establish them with the same legal ownership as the most recently-opened joint account, unless we are instructed otherwise. If you request a different form of ownership, we will request your signature acknowledging that election. For example, if you open an account as joint tenants with rights of survivorship, your next account with the same parties will also be established as joint tenants with rights of survivorship, unless you tell us you want a different type of ownership for that account.

### Margin Agreement and Margin Requirements

All Accounts that you open now or in the future will be established with margin, if eligible, unless you instruct us that you do not want margin privileges for specific Accounts. By signing the Signature Page for any Account except for an ERISA Plan or for an Estate, you agree that the Margin Agreement governs your use of margin in all of your current Accounts and any Accounts that you may open in the future.

Therefore, if you do not establish margin privileges when you open an Account and later decide to use margin, you may be able to do so without signing additional forms. Likewise, if you cancel your margin privileges on an Account, your margin agreement with us will remain in effect and you may request to use margin again at any time. In either event, we will confirm your request.

*"Card Issuer" refers to UBS Bank USA, its successors or assigns, or the issuer of the UBS Card we appoint in our sole discretion.*

*The UBS Credit Card and the UBS Rewards Program are not features of the International RMA.*

*If you do not want to establish margin for your current accounts or any accounts you open in the future, please contact your Financial Advisor.*

*Please note: UBS does not extend margin for the following accounts:*

- *Individual Retirement Accounts*
- *ERISA Plans*
- *Coverdell Education Savings Account*

Exhibit  B  Page 27 of 42
Client Relationship Agreement (CRA)

When you use your margin privileges, we hold your securities in your Account as collateral against the amounts you borrow, and your securities may be loaned to UBS or to others as described in the Margin Agreement. In addition, margin-eligible Accounts are subject to applicable statutes, rules, regulations, procedures or industry customs. We may deem it necessary or advisable to establish additional requirements for margin accounts. You agree to maintain sufficient assets to satisfy all applicable statutes, rules or regulations, or as we deem necessary or advisable. You also agree to maintain sufficient assets in your Account to satisfy any and all margin calls issued in connection with the Account.

As long as your Account is a margin account, you authorize UBS in the usual course of business to lend, pledge as collateral, hypothecate, relend or repledge any Property we carry for you on margin, whether separately or together with Property of others, either to ourselves or to others. This authorization remains in effect until we receive payment for such Property.

When you use your margin privileges, as permitted by law, we may use certain securities in your account for, among other things, settling short sales and lending securities for short sales. We may receive and retain compensation in connection with such transactions. If you are engaged in short selling a security, you may incur a charge due to certain borrowing costs for that particular security.

Subject to applicable rules and regulations, we may amend , the requirements applicable to your margin account at any time in our sole discretion, including changing the level of credit available to you and applicable maintenance requirements without notice to you. A prior demand or call, or prior notice of the time and place of such sale or purchase shall not be considered a waiver of our right to sell or buy without demand or notice as described here.  For additional terms, please refer to the section "Liquidation of Collateral or Account" below.

We have the right to satisfy a margin call or to require or obtain full or partial payment of a margin loan at any time without a demand for margin or additional margin or other notice. To satisfy a margin call or to obtain full or partial payment of the margin loan, in addition to all rights provided by law, we have the right to:
1. require additional collateral,
2. sell any Property in any of your Accounts with us, whether carried individually or jointly with others,
3. buy any Property which may be held short in your Account,
4. cancel any open orders and close any or all outstanding contracts, or
5. liquidate any of your Accounts with us.

We may also exercise these rights at any time in our sole and absolute discretion.

**You understand that there are substantial risks involved in trading securities on margin, using leverage as a liquidity source or as part of your investment strategy, or otherwise pledging your securities in order to obtain credit. Please review the Loan Disclosure Statement included in the Agreements and Disclosures booklet carefully for a detailed discussion of these risks.**

- *403(b)(7) Accounts*
- *UGMA*
- *UTMA*
- *Estate*
- *529 Plan Accounts*

*Hypothecation is the pledging of securities or other assets to secure a loan such as debit balance in a margin account.*

*"Property" includes, but is not limited to, securities, securities entitlements, investment property and financial assets, including without limitation, money, stocks, options, bonds, notes, futures contracts, commodities, commercial paper, certificates of deposit and other obligations, contracts, all other property usually and customarily dealt in by brokerage firms and any other property that can be recorded in any of your Accounts, as well as the Accounts themselves.*

*Please refer to the UBS Statement of Credit Practices for additional information.*

Exhibit  B  Page 28 of 42
Client Relationship Agreement (CRA)

### Security Interest

As security for the payment of all liabilities or indebtedness presently outstanding or to be incurred under this or any other agreement between you and any UBS Entity, including but not limited to any loans or promissory notes, you hereby grant to each UBS Entity a security interest in and lien on any and all Property held or carried by any UBS Entity for you or on your behalf in or credited to any UBS Account(s) (other than qualified plan or IRA accounts or other accounts where doing so would be a prohibited transaction or violation of applicable law or regulation) and in any other Account with any UBS Entity in which you may have any legal, equitable or other interest.

All such Property will be subject to such security interest as collateral for the discharge of your obligations to any UBS Entity, wherever or however arising and without regard to whether or not we made loans with respect to that Property. In enforcing our security interest, we have the discretion to determine the amount, order and manner in which the Property will be sold and have all the rights and remedies available to a secured party under the Uniform Commercial Code (UCC) in addition to all other rights provided in this Agreement or by law.

You will not cause or allow any of the Property held in any of your UBS Accounts, whether owned now or acquired later, to be or become subject to any liens, security interests, mortgages or encumbrances of any nature other than our security interest, without our prior written consent. Each UBS Entity shall act as agent for and on behalf of each UBS Entity for purposes of perfecting, maintaining and enforcing the security interests granted hereunder or by operation of law. Each UBS Entity acting in the capacity of a deposit bank, securities intermediary or commodities intermediary, agrees to follow the instructions and entitlement orders of each other UBS Entity with respect to the Property as a secured party without further consent by you. You hereby authorize and direct each UBS Entity to follow the instructions and entitlement orders of each other UBS Entity.

### Liquidation of Collateral or Account

We may satisfy any and all amounts you owe us in connection with any of your Accounts or agreements with us, or any other agreement between you and any UBS Entity, including but not limited to any loans, promissory notes or tax obligations, from Property we hold or carry in any of your Accounts with us (other than qualified plan or IRA accounts or other accounts where doing so would be a prohibited transaction or violation of applicable law or regulation). Additionally, we may sell any or all Property held in any of your Accounts with us and cancel any open orders for the purchase or sale of any Property without notice in the event of your death or dissolution, or whenever in our discretion it is necessary for our protection. In these instances, we may also borrow or buy-in all Property held in any of your Accounts required to make delivery against any sale initiated for you. These sales or purchases may be public or private and may be made without advertising or notice to you and in the manner we determine in our sole discretion. You waive diligence, presentment, protest, demand for payment and notice of nonpayment and further waive all other notices and formalities to which you may be entitled under applicable law or otherwise, to the extent the waiver of such notices and other formalities is permissible under applicable law.  Your waiver will not be invalidated by any demands, calls, tenders or notices that we may make. At any sale, we may purchase the Property or any portion thereof free of any right of redemption and you will remain liable for any deficiency in any of your Accounts, plus any accrued interest on the deficiency at our then customary rate, if applicable, or at the maximum rate allowable by law. We will not be liable to you in any way for any loses or adverse tax consequences resulting from a liquidation of your Property.

*"UBS," "we," "us," "our" and "ours" refer to UBS Financial Services Inc. and, unless we indicate otherwise in this Agreement, its successor firms, subsidiaries, correspondents and Affiliates, including without limitation, its parent company, UBS AG.*

*"Affiliates" refers to UBS Financial Services Incorporated of Puerto Rico (which clears through UBS Financial Services Inc.), UBS Bank USA, UBS Credit Corp., UBS Trust Company, N.A. and their insurance agency affiliates and subsidiaries, and all other subsidiaries and affiliates.*

*"UBS Entity" refers to UBS Financial Services Inc. and each of these Affiliates.*

*"Securities Intermediary" means: 1) a clearing corporation; or 2) a person, including a bank or broker, that in the ordinary course of business maintains securities accounts for others and is acting in that capacity, as such terms are interpreted under Section 8-102(a)(14) of the United States Uniform Commercial Code.*

Exhibit  B  Page 29 of 42
Client Relationship Agreement (CRA)

### USA Patriot Act

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information and documentation identifying each account holder. Therefore, when you open an Account, we ask for your name, address, date of birth and other identifying information about you. We may ask to see your driver's license or other identifying documents. We may also screen your name against various databases to verify your identity. If we are unable to verify your identity, we may take any of the actions described under "Termination of your Account" in the General Terms and Conditions in the Agreements and Disclosures booklet.

### Credit Report

You grant us permission to obtain a credit report when you open an account with us and to obtain updated credit or similar reports at any time during the time your account remains open. You grant us permission to check and verify your credit references and update all credit information we have obtained on you. We may provide any such credit report or other credit information we have obtained on you to our Card Issuers, Check Providers or to our affiliates, to enable them to provide additional products or services that may be of interest to you and to otherwise assist us in servicing, administering and maintaining your account and evaluating your financial needs.

### Your Privacy

At UBS, we are committed to safeguarding your personal information. Please refer to the UBS Client Privacy Notice in the Agreements and Disclosures booklet, which describes the personal information we collect about you and how we handle and protect it.

Subject to any applicable financial privacy laws and regulations, you acknowledge that we share such personal financial data regarding you and your Accounts with our affiliates and non-affiliates as is necessary or advisable to effect, administer or enforce transactions requested or authorized by you, or to service, process or maintain, your Accounts and all transactions related to or in connection with your Accounts.

*Please see the UBS Client Privacy Notice in the Agreements and Disclosures booklet for further information, including how to opt-out of certain information sharing.*

### Disclosure of Beneficial Ownership

The issuers of securities held in your Accounts may request your name, address and security position so that they may contact you directly for proxy voting and other shareholder communications.  You may instruct us not to supply this information, in which case, you will receive information regarding those securities from UBS instead of the issuers.  Your current instructions are reflected on the Account Information pages of the Completing Your Account Opening Process package. If you would like to change your instructions, please call your Financial Advisor.

As described in the section "Foreign Securities" in the General Terms and Conditions, we may share information about the beneficial ownership of foreign securities in your Accounts with the issuers of those securities, foreign government authorities of their agent, to obtain reduced tax withholding rates, to comply with local law or to respond to other lawful requests.

Exhibit  B  Page 30 of 42
Client Relationship Agreement (CRA)

### Householding of Statements and Other Communications

As a convenience to you, we may consolidate periodic communications for certain accounts with the same address. This practice, called "householding," applies to account statements, trade confirmations, personal and financial information required to be sent by regulation, preliminary and final prospectuses and Summary of Accounts statements, which provide consolidated information for all of the accounts in your household. Households are determined as follows:

- Accounts that share the same name, address and Social Security or Tax ID Number are automatically placed in the same household.

- Accounts that share only the same address will be placed in the same household only with the express consent of all the Account holders.

We mail household communications in a single envelope (if you receive paper delivery) or, if you receive electronic delivery, we make them available through UBS Online Services or other electronic delivery method.  Any member of your household who is enrolled in UBS Online Services can have access to view all Accounts in the household.

The composition of a household will change as clients move away from the household mailing address, and the addressee for household mailings may also change over time. Where owners of joint accounts live at different addresses, household mailings will be sent to at least one account owner's address and may be included with mailings for other accounts at that address under the conditions described above.

**Periodically we are required by industry regulators to send records of certain personal and financial information to our clients**. Because we deliver these records with your account statements, other members of your household may have access to these records unless you instruct us to send them to you separately.

If you do **not** want your statements and other periodic communications from us to be bundled by household, please contact your Financial Advisor and ask to receive individual mailings in separate envelopes or delivered separately via electronic means.

### E-mail Communications

We discourage clients from transmitting personal or confidential information through e-mail. If you choose to send personal and confidential information to us via e-mail, we cannot be responsible for any loss or damages that occur as a result, such as losses or damages arising from mistaken identity or unauthorized access and the use of the information (for any purpose) by others who may intercept or otherwise access the communications during and after transmission.

### Entire Agreement and Changes to the Agreement

This Client Relationship Agreement and the related documents, including the General Terms and Conditions and the rest of the Agreements and Disclosures booklet form the entire "Agreement" between you and UBS Financial Services Inc. or UBS Financial Services Incorporated of Puerto Rico with respect to your Account(s).

The accounts and services we offer may change over time. We may change our Agreement with you at any time by sending you a written notice of the change, and the changes will be effective on the date of the notice unless we specify a later date. We also may cease to offer services at any time without prior notice.  Your continued use of your Accounts and our products and services constitutes your acceptance of the new terms and conditions. All changes by you to the Agreement will become effective only if offered in writing and signed by us.

### Applicable Law

This Agreement, including the Arbitration provisions below, and its enforcement, are governed by the laws of the State of New York, without giving effect to such State's

*If you do **not** want your statements to be bundled by household, please contact your Financial Advisor and ask to receive individual account statements mailed in separate envelopes or delivered separately via electronic means.*

*For more information regarding electronic delivery of periodic communication for your Account, please refer to the Electronic Delivery Agreement below.*

Exhibit  B  Page 31 of 42
Client Relationship Agreement (CRA)

choice of law or conflict of laws provisions. The Agreement is binding on you and on UBS Financial Services Inc. and UBS Financial Services Incorporated of Puerto Rico provided that there is no inconsistency with the Federal securities laws or the Federal or State banking laws. In connection with any Card issued, the respective Cardholder Agreement shall be governed by Federal law and the law designated by the Card Issuer in that Cardholder Agreement.

In the event that any of the Arbitration provisions below are found to be unenforceable, you submit to the exclusive jurisdiction of the courts of the State of New York and the Federal courts sitting in the Southern District of New York for the purpose of determining all matters with regard to the Agreement.  You also consent to service of process by certified mail to your Account's address of record, and you waive any objection to the venue and any claims that an action or proceeding has been brought in an inconvenient forum. If any provision of the Agreement is held to be invalid, void, or unenforceable, the remaining provisions will remain in full force and will be construed to the fullest extent permitted by law, to give effect to the intent of any provision that has been called into question.

### Non-Primary Residence Address for Mailing Purposes

Unless you notify us otherwise in writing, you authorize us to use the Account Address you provided in the Account Application to mail all notices, correspondence and for the disbursement of Property, even if it is not your primary residence. Based upon this authorization, we will not telephone you to confirm receipt of property or require a signed written confirmation from you acknowledging transmittal of property. If you would like to designate an alternative mailing address for the account, please contact your Financial Advisor to provide the necessary authorization.  Even when you have provided a mailing address for the Account, some correspondence may be delivered to your legal residence address only based upon operational considerations.

### Electronic Records

Any agreements accepted by facsimile or electronic means (such as clicks or other online means) are legally binding and are considered to have been "signed" by you with the same effect as a manual signatures. Electronic records of an agreement that is made online will also be considered to be "in writing." You agree not to dispute the validity or enforceability of any agreements entered into electronically by you (or by anyone using your authentication devices, such as a password or PIN).

### Electronic Delivery Agreement

UBS offers certain communications through electronic delivery. Categories of communications you may enroll in for e-Delivery include:

- Statements for your UBS Accounts, which include your UBS Visa Signature® credit card statement from the Card Issuer; notices delivered on or with statements such as our annual Client Privacy Notice; and messages about transactions and payments.
- Trade confirmations and notices regarding account activity.
- Shareholder communications, including annual and other shareholder reports, preliminary and final prospectuses, proxy materials and information about other corporate actions. Shareholder communications also includes all account documents related to Investment Advisory accounts and fee- based financial planning services, including Form ADV disclosure brochures, manager profiles, asset allocations, performance reports and other disclosures, reports and notices related to advisory accounts and fee-based financial planning services.
- Quarterly performance reports.
- UBS Equity Plan Advisory Services plan advices.
- Tax reporting documents, including 1099s and other tax documents that are available now or become available in the future.
- Agreements and disclosures relating to the accounts, features and services we offer.

Any member of your household may enroll any other household account in electronic delivery of these periodic communications, except for tax reporting documents.  By enrolling in e-Delivery of any communications described above, you agree that we may

*Please see the section Householding of Statements and Other Communications above for further*

de 0250 3716 7432 11/25/2015

Exhibit  B  Page 32 of 42
Client Relationship Agreement (CRA)

also deliver similar firm documents electronically that may be available now or in the future. When available, confirmations of your personal and account information may be included with related documents that are delivered electronically through UBS Online Services or any other secure method. **Please note:** These confirmations are sent periodically and to confirm certain changes to your account information. These confirmations may be viewable by other members of your household through UBS Online Services or other secure methods. Contact your Financial Advisor if you prefer to receive private, paper versions of confirmations of personal and account information instead of electronic versions.

*information regarding how a household is established.*

If you enroll in e-Delivery for any of the communications described above, the following terms and conditions will apply to all of the UBS accounts (current and future) in your UBS statement household.

- A valid e-mail address is required for our e-Delivery services and you are responsible for notifying UBS when your e-mail address changes; you may update your e-mail address online through UBS Online Services or by calling your Financial Advisor.
- Access to UBS Online Services is required for e-Delivery of documents that contain any personal information; we may, however, deliver such documents by other secure means in the future.
- Enrollment in e-Delivery is effective immediately and may be cancelled at any time, either by changing your elections online or by contacting your Financial Advisor; we confirm cancellations and other changes to your delivery preferences by e-mail or regular mail whether they were initiated by you or UBS.
- Enrollment for any e-Delivery services for any of your accounts will automatically apply to any accounts that you open in the future at UBS, subject to certain system limitations.
- You may request paper copies of any document we are required to deliver to you at any time for no additional charge by contacting your Financial Advisor.
- We notify you by e-mail when a new document is available; to protect your information, the electronic message generally includes a link to a secure UBS website where the document can be viewed and downloaded.
- If your e-mail address fails, we will mail paper copies of documents or a paper notice that a document is available with instructions on how to access it.
- By enrolling in e-Delivery, you confirm that you have access to a printer or other device to print or save documents you may wish to retain.
- We do not charge for e-Delivery, but your Internet access provider may have separate charges.

Exhibit  B  Page 33 of 42
Client Relationship Agreement (CRA)

UBS Client Relationship Agreement

### *Representations and Agreement for Trustee Certification*

*Representation of a Trust Agreement in Effect*

For trust accounts, each Trustee, certifies, represents and warrants that the trust to which this certification applies is in full force and effect and that the information you have supplied to UBS is true and accurate, as we rely on that information to service your accounts.

Unless we are updated subsequently by the trustees, UBS will rely on this certification, which includes the information you provide on the Signature Page, to service accounts you may open in the future for the same trust. By signing a UBS Trustee Certification and Agreement, you agree that:

*The "UBS Client Relationship Agreement" plus the additional information, terms and conditions, and disclosures pertaining to the accounts and services you have requested UBS to establish for the Trust govern the overall relationship between the Trust and UBS.*

- Each trustee (or a corporate officer if the account is a corporate trust) executed the certification.

- You have full power under the trust agreement and applicable law to submit valid orders and other instructions relative to the trust Account(s).

- The trust agreement authorizes you to make distributions and transfers from the trust.

- You have received and read the "UBS Client Relationship Agreement" and the documents it references and agree to those terms and conditions for all accounts you open on behalf of the trust.

- As Trustee(s), you have broad investment powers under the Trust and applicable law. You have noted any restrictions on your power as trustee(s) on the Signature Page for the first trust account you open, and agree that the powers and restrictions listed here and on the Signature Page are accurate and complete.

*Trustee's Ability to Bind the Trust*

Unless you indicate otherwise on the Signature Page, you agree that any individual trustee may independently exercise any of the trust's powers. This means that UBS is authorized to take instructions from and accept any document on behalf of the trust (including but not limited to agreements to arbitrate all disputes involving the trust account) signed by any one of the trustees. You agree that UBS may, in its discretion, require the joint action of all trustees whenever UBS deems such joint action to be necessary or appropriate.

By signing a UBS Trustee Certification and Agreement, you agree that:

- Unless you have noted otherwise, you have the authority to pledge, mortgage, assign or subject to a security interest or lien in favor of UBS, any property of the trust as security for any liability of the trust.

- You have the authority to execute any and all relevant documents and bind the trust to any agreements entered into with respect to such activities.

- **You understand that, if you have requested margin privileges on behalf of the trust, UBS holds securities in margin-eligible trust accounts as a lien against the amounts borrowed by the trust, and you agree to maintain sufficient collateral in the account to meet margin calls we might issue.**

de 0250 3717 7434 11/25/2015

*Trustee's Acknowledgement*

By signing a UBS Trustee Certification and Agreement, you agree that:

- UBS may assume without further inquiry and is not required to confirm your power and authority as trustee(s) or to verify instructions for the delivery of any money or property to you as trustee(s).

- UBS is not required to confirm that you are properly exercising your power and authority unless UBS has actual knowledge to the contrary.

*Liability and Indemnification*

By signing a UBS Trustee Certification and Agreement, you agree that:

- UBS is acting in reliance on this certification and is not liable for any breach of fiduciary duty for account activities and transactions that are not specifically identified in this certification as a limitation on your authority to invest or act on behalf of the trust.

- UBS is not required to inquire whether any transaction represents a proper exercise of the trustees' power or authority, unless it is demonstrated that UBS had actual knowledge that either the transaction's proceeds were being improperly used for the trustees' benefit or that the transaction exceeded or was in breach of the trustees' powers or authorities.

- You fully indemnify UBS from all losses, liabilities, damages, claims, costs and expenses, including attorney fees resulting from UBS acting in reliance on this certification.

- As trustees, you are each jointly liable for performing your obligations under this certification and agreement

- Your obligations and this indemnification remain in effect if the trust is terminated or its accounts are transferred and shall bind all your successors and assigns.

*Duty to Update*

You agree to provide UBS an updated certification if there is any amendment to the trust, any change in the composition of the trustees, or any other event that materially alters the facts which you have certified and upon which we are relying to service the trust account(s).

If we are uncertain of the authority conferred by this certification, its continuing effectiveness, or any other certification of the trustees, we may refrain from taking any action with respect to the account(s) until we are satisfied as to the authority of the trustee(s). You agree to indemnify us from any claims, demands, expenses, losses or damages if we refrain from acting for these reasons.

*Authority To Appoint/Hire Investment Advisor or Other Third Party*

By signing a UBS Trustee Certification and Agreement, you agree that:

- Unless you have indicated otherwise on the Signature Page, you have the power under the trust agreement and applicable law to appoint or hire an investment advisor or other third party to manage and have discretion with respect to the trust's assets and liabilities, including, the authority to execute a power of attorney or letter of authorization for that purpose.  In the event that you appoint or hire an investment advisor or third party on behalf of the trust, you agree to provide additional documentation to UBS as we request.

- You have the authority to open the trust account(s), place assets in the trust account(s), make each and every representation and warranty set forth in this certification and agreement, engage in each of the actions on behalf of the trust set forth in this certification and agreement, and execute this certification and agreement.

- All investment advisors or other third parties you appoint or hire to manage and/or have discretion with respect to the trust's assets and liabilities are bound by your acknowledgements, agreements, representations and warranties in this certification and agreement, and the obligations you have undertaken.

*Grantor Power to Amend and Revoke – Revocable Trusts Only*

By signing a UBS Trustee Certification and Agreement, you agree that either:

You are the grantor of a revocable trust and you have full power and authority under the trust agreement and applicable law to freely amend and revoke the trust, **OR**

As a non-grantor trustee, you represent that the grantor has full power and authority under the trust agreement and applicable law to freely amend and revoke the trust.

*Grantor Authorization for Credit Disclosure*

By signing a UBS Trustee Certification and Agreement, each grantor agrees that:

You authorize UBS to obtain a credit report or other verbal or written credit references about your credit history or to verify or update credit information given to UBS.

### Introduced Accounts

Accounts opened with UBS Financial Services Incorporated of Puerto Rico or any other broker-dealer under a clearing agreement with UBS Financial Services Inc. are "introduced" to UBS Financial Services Inc. and will be carried by UBS Financial Services Inc. in your name. Please refer to the section titled "Introduced Accounts" in the General Terms and Conditions for a description of the services provided by your introducing broker and by UBS Financial Services Inc.

### Puerto Rico Residency Representation

If Puerto Rico investments are purchased and/or held in a UBS Financial Services Incorporated of Puerto Rico account, each account owner, or for an account of an entity, the authorized person(s), certifies the following:

You may hold or purchase certain investments in your Account, including, but not limited to, closed-end and open-end mutual funds, preferred stock and debt securities that are not registered under the U.S. Securities Act of 1933 or the U.S. Investment Company Act of 1940  and are exempt from registration under the U.S. Securities Act of 1933 and/or the U.S. Investment Company Act of 1940 ("Puerto Rico Investments"), based in part, on the requirement that they be offered or sold only to individuals who have their principal residence in Puerto Rico and to entities whose principal office and place of business are in

de 0250 3718 7436 11/25/2015

Exhibit  B  Page 36 of 42
Client Relationship Agreement (CRA)

Puerto Rico ("Puerto Rico Residents"), as disclosed in the respective prospectuses or offering materials. You are aware that certain Puerto Rico Investments may not be suitable to all investors as they may be designed primarily for long-term investors.

Accordingly, you hereby represent that:

- You have acquired or propose to acquire Puerto Rico Investments for your own Account and will be the beneficial owner of those assets.

- If you propose to acquire Puerto Rico Investments for the Account of a retirement plan that is the beneficial owner of the assets, you acknowledge that UBS may limit, in part or in total, the amount of any such purchase, whether or not the retirement plan is subject to ERISA.

- As of the date of this agreement, (i) you are an individual whose principal residence is in Puerto Rico, or (ii) if organized as a non-business trust, the trust has its principal office and principal place of business within Puerto Rico and the trustee and all beneficiaries of the trust are Puerto Rico Residents, or (iii) if organized as a trust, the trustee and all beneficiaries of the trust are Puerto Rico Residents, or (iv) if organized as a corporation, partnership or other form of business organization, the entity has its principal office and principal place of business within Puerto Rico and has not been organized for the purpose of acquiring Puerto Rico Investments.

- If you cease to be a Puerto Rico Resident, you will (i) notify us within 30 days of ceasing to be a Puerto Rico Resident, (ii) liquidate your holdings in any Puerto Rico Investment when such liquidation becomes economically feasible, and (iii) not acquire additional Puerto Rico Investments.

- You acknowledge that if at the time of your acquisition of Puerto Rico Investments you are not a Puerto Rico Resident, UBS may declare such acquisition null and void.

*Arbitration*

**This Agreement contains a predispute arbitration clause**. By signing an arbitration agreement the parties agree as follows:
- All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.
- The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.
- The arbitrators do not have to explain the reason(s) for their award, unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.
- The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.
- The rules of the arbitration forum in which the claim is filed, and any amendments to them, shall be incorporated into this Agreement.

*This Arbitration Agreement represents standard industry practice and binds you and UBS Financial Services Inc. or UBS Financial Services Incorporated of Puerto Rico to arbitrate any disagreements that may arise between the parties.*
*"The parties", for purposes of this arbitration agreement, are UBS Financial Services Inc. or UBS Financial Services Incorporated of Puerto Rico and you, including on behalf of your heirs, executors, administrators and assigns.*

By opening an account at UBS, and by UBS Financial Services Inc. or UBS Financial Services Incorporated of Puerto Rico by accepting your application and carrying your account, you, UBS Financial Services Inc. and UBS Financial Service Incorporated of Puerto Rico agree as follows:

- To resolve any controversy, claim or issue in any controversy that may arise between you and UBS Financial Services or UBS Financial Services Incorporated of Puerto Rico by arbitration, whether it happen before or after, or at the time this Agreement was executed, including but not limited to controversies, claims or issues in any

Exhibit B Page 37 of 42
Client Relationship Agreement (CRA)

controversy concerning any account, transaction, dispute or the construction, performance or breach of this Agreement or any other agreement.

- Any arbitration under this Agreement shall be governed by the Federal Arbitration Act and shall be conducted before an arbitration panel convened by the Financial Industry Regulatory Authority (FINRA) or any other national securities exchange's arbitration forum, upon which UBS Financial Services Inc. or UBS Financial Services Incorporated of Puerto Rico is legally required to arbitrate the controversy with you, including, where applicable, the Municipal Securities Rulemaking Board.
- Such arbitration shall be governed by the rules of the organization convening the panel.
- The arbitrators shall resolve any controversy in accordance with applicable law.
- The arbitrators will apply state and federal statutes of limitation the same as if the claim were brought as a civil action in court.
- The award of the arbitration panel is not subject to appeal and judgment upon the award may be entered in any court of competent jurisdiction.
- No person shall bring a putative or certified class action to arbitration nor seek to enforce any pre-dispute arbitration Agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:
  – the class certification is denied; **or**
  – the class is decertified; **or**
  – the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.
- You expressly agree that service of process in any action shall be sufficient if served by certified mail, return receipt requested, at your last address known to UBS.
- You expressly waive any defense to service of process as set forth above.

Exhibit  B  Page 38 of 42
Client Relationship Agreement (CRA)

# Signature Page

For Your Records

**Denise Otero Vilarino**

| Account Number and Description | Signature Requirement |
|---|---|
| R2 90147 RMA Domestic - Joint Ten W/Rights Surv | Client Relationship Agreement |

**Lorenzo Esteva**

| Account Number and Description | Signature Requirement |
|---|---|
| R2 90147 RMA Domestic - Joint Ten W/Rights Surv | Client Relationship Agreement |

By signing below and depositing cash or securities in my account, I acknowledge that I have read, understand and agree with the enclosed UBS Client Relationship Agreement, as well as the terms, conditions and disclosures in the enclosed Agreements and Disclosures booklet.

**Margin Agreement**
I acknowledge that when I use margin privileges, UBS will hold the securities in my Account as collateral against the amounts I borrow. I agree to keep sufficient positions and margin in my Account to meet any margin calls UBS may be required to issue. By signing below, I agree that the Margin Agreement in my Client Relationship Agreement applies to all of my accounts, including any accounts that I may open in the future. *Note: UBS does not extend margin for certain types of accounts (e.g., IRA and ERISA Plan accounts, Coverdell Education Savings Accounts, 403(b)(7) Accounts, UGMA/UTMA, Estate or 529 Plan Accounts).*

Likewise, I acknowledge and agree that certain securities in my account, including any account I may open in the future, may be loaned to UBS or to other persons or entities as described in the Margin Agreement.

**Electronic Delivery Consent**
As you requested, we have sent your agreements and disclosure booklet and other account-related documents electronically to estevlo@gmail.com, which we consider to be the e-mail address of record for all owners of the account. The information is also available at www.ubs.com/accountdisclosures or by request to your Financial Advisor, Lorenzo Esteva at 1-305-536-9200.

de 0250 3720 7439 11/25/2015

*Continued on next page...*

**FOR YOUR RECORDS**

**Denise Otero Vilarino**

**For Accounts:**
R2 90147 RMA Domestic - Joint Ten W/Rights Surv

**Enter your Tax ID Number:**

| X | X | X | – | X | X | – | X | X | X | X |



☐ Check here if you have been notified by the IRS that you are subject to backup withholding, and therefore have crossed out item (2) below.

**Exemption from FATCA reporting code (if any):_____**

**W-9 Form Certification**
Under penalties of perjury, I certify that: (1) the number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and 2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. citizen or other U.S. person (defined in the instructions), and (4) The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification Instruction:** You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

**The Client Relationship Agreement contains a pre-dispute arbitration clause located in the final section under the title "Arbitration."**

X XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX        XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

Denise Otero Vilarino        Date



de 0250 3720 7440 11/25/2015

Exhibit  B  Page 40 of 42
Client Relationship Agreement (CRA)

*Continued on next page...*

**FOR YOUR RECORDS**

**Lorenzo Esteva**

**For Accounts:**
R2 90147 RMA Domestic - Joint Ten W/Rights Surv

**Enter your Tax ID Number:**

| X | X | X | – | X | X | – | X | X | X | X |

ENTER SSN HERE

☐ Check here if you have been notified by the IRS that you are subject to backup withholding, and therefore have crossed out item (2) below.

**Exemption from FATCA reporting code (if any):_____**

**W-9 Form Certification**
Under penalties of perjury, I certify that: (1) the number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and 2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. citizen or other U.S. person (defined in the instructions), and (4) The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification Instruction:** You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

**The Client Relationship Agreement contains a pre-dispute arbitration clause located in the final section under the title "Arbitration."**

**X** XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX        XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

Lorenzo Esteva                                           Date

SIGN AND DATE HERE

**Address of Record**

3672 Bayview Rd
Coconut Grove, FL  33133-6503

**Email Address of Record**

estevlo@gmail.com

de 0250 3721 7441 11/25/2015

**Intentionally Left Blank**

55165043_0250

de 0250 3721 7442 11/25/2015

55165043_DE00250_00250_M_S
Client Relationship Agreement (CRA)

### PROMISSORY NOTE #R00007906N

$1,649,993.00                                                                                                    December 8, 2015

FOR VALUE RECEIVED, LORENZO ESTEVA, (the "Employee") promises to pay, as herein provided, UBS Credit Corp., a Delaware corporation and its successors and/or assigns, including all affiliates and related entities ("UBS"), in lawful money of the United States of America, at 1000 Harbor Boulevard, Weehawken, NJ 07086, or at such other place as UBS may direct, the principal sum of $1,649,993.00 (the "Principal Amount"), together with interest thereon from the date of this Note at a per annum interest rate of 1.8900% ("Interest Rate"). All interest will be computed on the basis of the number of days elapsed and a 360-day year. In the event that the first payment date below is more than one year from the date of this Promissory Note, interest will be accrued until the first payment date.

The Principal Amount, together with all accrued but unpaid interest thereon and any and all other fees or other charges payable in connection with this Promissory Note, including but not limited to any penalty incurred for late payment as described herein (collectively the "Obligations"), shall be due and payable in the amounts and on the dates set forth immediately below:

$164,999.30, plus accrued interest, on Nov 17, 2016
$164,999.30, plus accrued interest, on Nov 17, 2017
$164,999.30, plus accrued interest, on Nov 17, 2018
$164,999.30, plus accrued interest, on Nov 17, 2019
$164,999.30, plus accrued interest, on Nov 17, 2020
$164,999.30, plus accrued interest, on Nov 17, 2021
$164,999.30, plus accrued interest, on Nov 17, 2022
$164,999.30, plus accrued interest, on Nov 17, 2023
$164,999.30, plus accrued interest, on Nov 17, 2024
$164,999.30, plus accrued interest, on Nov 17, 2025

Employee understands and agrees that, to the extent permitted by applicable law, in the event that a payment due under this Note is not received by UBS within 10 days of the date set forth herein, he/she shall pay an additional late fee in the amount of 2% of the outstanding payment. In no event will this late fee exceed the maximum amount permitted by applicable law.

To the fullest extent permitted by law, Employee authorizes UBS to offset the above payments at the time they are due from any salary, commission, bonus, award, transition payment, or other compensation payable to the Employee by UBS and all related entities and/or any funds held by Employee in his/her UBS Financial Services Resource Management Account

## Composite Exhibit C Page 1 of 32
## Deferred Compensation Notes

("RMA"), or any other account maintained at UBS, other than deferred compensation as defined in Section 409A of the Internal Revenue Code and any related regulations and guidance, as the same may be amended from time to time ("I.R.C. Section 409A"). Notwithstanding the foregoing, to the fullest extent permitted by law, Employee additionally authorizes UBS to offset the above payments on a monthly basis in advance of when they are due from any salary, commission, bonus, award, transition payment, or other compensation payable and/or any funds held by Employee in his/her RMA, other than deferred compensation as defined in I.R.C. Section 409A. Employee agrees to execute any necessary authorizations related to the offsets described in this paragraph. All amounts prepaid to UBS shall be applied as payments due on the Principal Amount on the dates set forth above.

This Note shall immediately become due and payable without presentment, demand, protest, notice of default or other notice of any kind, which the Employee hereby expressly waives, in the event that the Employee's employment with UBS or any related entity is terminated, either voluntarily or involuntarily by the Employee or UBS, including any related entity, for any reason whatsoever.

Notwithstanding the above, UBS may demand full or partial payment of the Obligations, at its sole and absolute discretion, at any time.

Principal and interest under this Promissory Note may be prepaid in whole or in part at any time by the Employee. Any payments or prepayments (whether voluntary or mandatory) shall be applied at the option of UBS, first to collection costs, if any, then to accrued interest and then to principal.

Notwithstanding anything to the contrary contained in this Promissory Note, the interest rate charged hereunder shall not exceed the maximum rate allowable by applicable law. If the stated interest rate hereunder exceeds the maximum allowable rate, then the interest rate shall be reduced to the maximum allowable rate, and any excess payment of interest made by the Employee at any time shall be applied to any unpaid or future payments due to UBS hereunder (or returned to the Employee if no such payments are or will become due).

The Employee hereby waives diligence, presentment, demand, notice of maturity, protest, notice of protest, notice of non-payment and any other notice of any kind in connection with this Promissory Note.

In the event that any arbitration, suit or other proceeding is brought against the Employee to collect this Promissory Note, UBS shall be entitled to recover from the Employee all costs and reasonable expenses of collection and enforcement, including, without limitation, attorneys' fees and disbursements, including costs and attorneys' fees incurred in defense of any counterclaims asserted by Employee. In addition, in the event of a payment default hereunder, the Employee shall pay all reasonable attorneys' fees and disbursements incurred by UBS in obtaining advice as to its rights and remedies in connection with such default.

UBS will at all times have a right to set off any or all of the Obligations, at or after the time at which they become due, whether upon demand, by acceleration or otherwise, against all securities, cash, deposits or other property in the possession of or at any time in any account

Composite Exhibit  C  Page 2 of 32
Deferred Compensation Notes

maintained with UBS or any of its related entities by or for the benefit of the Employee, whether carried individually or jointly with others including but not limited to Employee's RMA, other than items considered to be deferred compensation as defined in I.R.C. Section 409A ("Accounts"). This right is in addition to, and not in limitation of, any right UBS may have pursuant to any agreement, applicable law or otherwise.

As security for the payment of Employee's Obligations under this Promissory Note, Employee hereby grants to UBS and any of its related entities a security interest in and lien on any and all property held or carried in or credited to any and all Accounts ("Property"). All such Property will be subject to UBS's security interest as collateral for the satisfaction and discharge of Employee's Obligations.

In enforcing its security interest, UBS or any of its related entities has absolute discretion to determine the amount, order and manner in which the Property will be sold, and shall also have all other remedies available to a secured party under the Uniform Commercial Code ("UCC") in addition to all other rights provided by this or any other Agreement between the parties or by law. Without limiting any of the foregoing, UBS and any of its related entities shall also have the right, at its sole and absolute discretion, to freeze, take possession of or otherwise exercise control over any and all Accounts, without presentment, demand or notice to Employee, to secure payment of Employee's Obligations under this Promissory Note, such that, among other things, Employee will not be able to transfer the Accounts or make withdrawals from the Accounts unless and until UBS has determined, in its sole and absolute discretion, that Employee's Obligations have been fully satisfied. By signing this Agreement, Employee expressly authorizes and consents to this remedy.

Employee expressly acknowledges and agrees that UBS and any of its related entities will not be liable to Employee in any way for any adverse tax consequences (for tax effect or otherwise) including, but not limited to, any compensatory, consequential, punitive or other damages, resulting from the liquidation or freezing of any Account.

All rights and remedies of UBS under this Promissory Note are cumulative and are in addition to all other rights and remedies that UBS may have at law or equity or under any other contract or other writing for the collection of any amount due under this Promissory Note.

This Note may be assigned by UBS, and the benefits and obligations hereof shall inure to UBS's successors and assigns.

This Promissory Note may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by UBS. The non-exercise by UBS of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance. Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

By their signatures below, Employee and UBS agree to the Arbitration and Class Action Waiver Agreement attached to this Note as Appendix A.  Employee acknowledges and agrees that Employee has read, understands and agrees to the terms and conditions of the Agreement attached hereto as Appendix A.

EXCEPT AS OTHERWISE EXPRESSLY STATED IN APPENDIX A, THIS PROMISSORY NOTE SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

IN WITNESS WHEREOF, Employee has executed this Note as of the date set forth above.

EMPLOYEE:

*Lorenzo Esteva*

UBS:

*Matthew Luutau*

Page 4 of 8

APPENDIX A
Arbitration and Class Action Waiver Agreement –Dispute Resolution Agreement

a.    Binding Mutual Arbitration.  By their signatures to the Promissory Note to which this Appendix A is attached, Employee and UBS agree that any Covered Claims (defined below) will be resolved by final and binding arbitration as set forth in this Dispute Resolution Agreement ("Agreement").  This Agreement applies with respect to all Covered Claims, whether initiated by Employee or UBS.  By agreeing to this Agreement, Employee and UBS each acknowledge and agree that, to the fullest extent permitted by law, Employee and UBS are giving up Employee's and its right to a jury trial of Covered Claims.   The Agreement shall be governed by and interpreted in accordance with the Federal Arbitration Act ("FAA") and the law of the State of New Jersey to the extent New Jersey law is not inconsistent with the FAA and without regard to conflicts of law principles.

b.    Covered Claims.  Except for the Excluded Claims (defined below), and to the fullest extent permitted by law, Covered Claims include any and all claims or disputes between Employee and UBS, or UBS's parents, subsidiaries, affiliates, partners, predecessors, and successor corporations and business entities, and its and their officers, directors, employees, and agents, including but not limited to all claims and disputes arising out of or in any way relating to Employee's  employment, compensation, benefits and terms and conditions of employment with UBS or any of UBS's current, former or future parents, subsidiaries, affiliates, partners, predecessors, or successor or affiliated or related corporations or business entities, including without limitation UBS AG and UBS Financial Services Inc. ("UBS business entities"), or the termination thereof, including but not limited to contract, tort, defamation, breach of fiduciary duty and other common law claims, wage and hour claims, statutory discrimination, harassment and retaliation claims, and claims arising under or relating to any federal, state or local constitution, statute or regulation, including, without limitation, the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Employee Retirement Income Security Act ("ERISA"), the Worker Adjustment and Retraining Notification Act ("WARN"), the Equal Pay Act ("EPA"), the Americans With Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and any other federal, state or local wage and hour, compensation, benefits, or discrimination law, and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action now or hereafter recognized.

c.    Excluded Claims.  The following claims and disputes are not subject to this Agreement: (i) applications by either party for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration, (ii) claims for workers' compensation benefits, but not retaliation claims arising out of or relating to claims for workers' compensation benefits, (iii) claims for unemployment compensation benefits, (iv) claims under the National Labor Relations Act, as amended, within the exclusive jurisdiction of the National Labor Relations Board, and (v) any claim that is expressly precluded from arbitration by a federal statute or regulation.  Nothing in this Agreement shall prohibit Employee from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National

Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency. Employee also has the right to challenge the validity of the terms and conditions of this Agreement on any grounds that may exist in law and equity, and UBS shall not discipline, discharge, or engage in any retaliatory actions against Employee in the event Employee chooses to do so or engage in other protected legal activity. UBS, however, reserves the right to enforce the terms and conditions of this Agreement in any appropriate forum.

d.    <u>WAIVERS</u>.  TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EMPLOYEE AND UBS AGREE THAT NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD, OR DETERMINED ON A CLASS ACTION BASIS, COLLECTIVE ACTION BASIS, OR REPRESENTATIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION, AND THAT EMPLOYEE IS NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS ACTION MEMBER OR REPRESENTATIVE, COLLECTIVE ACTION MEMBER OR REPRESENTATIVE, OR REPRESENTATIVE ACTION MEMBER OR REPRESENTATIVE, OR RECEIVE ANY RECOVERY FROM A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION INVOLVING COVERED CLAIMS EITHER IN COURT OR IN ARBITRATION.  Employee further agrees that if Employee is included within any class action, collective action, or representative action in court or in arbitration involving a Covered Claim, Employee will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be.  Any issue concerning the validity or enforceability of any of the class action, collective action, or representative action Waivers contained in this Agreement shall be decided only by a court of competent jurisdiction.  Any issue concerning arbitrability of a particular issue or claim pursuant to this Agreement (except for issues concerning the validity or enforceability of the class action, collective action, and representative action Waivers) must be resolved by the arbitrator, not the court.  Nothing in this Agreement shall preclude Employee from pursuing or participating in a class action, collective action, or representative action in court where Employee's claim is based solely on Employee's status as a customer or an investor and does not arise out of or in any way relate to Employee's employment relationship with UBS.

e.    <u>Selection and Rules</u>.  Except as specified herein, the applicable arbitration rules will be the rules of the selected arbitration forum as indicated below, or any successor rules or, if none exist, the rules most applicable to employment claims and disputes and, if the forum no longer exists, the successor forum.  Except as specified herein, any arbitration of a Covered Claim will be conducted under the auspices and rules of the Financial Industry Regulatory Authority ("FINRA") in accordance with the FINRA Code of Arbitration Procedure for Industry Disputes ("FINRA Arbitration Rules").  If a Covered Claim may not be arbitrated before FINRA or is otherwise excluded from or not subject to arbitration before FINRA, then such Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Arbitration Rules"),  except as specified herein, and shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing.  In addition, Employee may elect to arbitrate discrimination claims under any federal, state or local law (including claims of harassment and retaliation under those laws) before JAMS in accordance with and

Deferred Compensation Notes

subject to the JAMS Arbitration Rules, and any such arbitration shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing. Arbitration shall be held in the county in which Employee worked or work at the time the claim arose or, if not possible, in the county closest to Employee's principal place of employment at the time the claim arose where the arbitration can be held. To the extent any of the terms, conditions or requirements of this Agreement conflict with the JAMS Arbitration Rules or FINRA Arbitration Rules, the terms, conditions or requirements of this Agreement shall govern. Arbitrators are required to issue a written award, and their awards shall be final and binding, and any judgment or award issued by an arbitrator may be entered in any court of competent jurisdiction. No arbitration award or decision will have any preclusive effect as to any issues or claims in any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the arbitration.

f.      Remedies. Subject to the parties' right to appeal or seek vacatur under applicable law, Employee and UBS agree that the decision of the arbitrator(s) will be final and binding on the parties and that the arbitrator(s) is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction, including attorneys' fees and costs. As part of Employee's costs, Employee may recover expert fees incurred by Employee to the same extent as Employee could in court.

g.      Additional Provisions Applicable to Arbitration of Statutory Claims. Subject to any applicable fee-shifting provisions, if Employee initiates arbitration of statutory claims with FINRA or JAMS, Employee shall be responsible for the filing fee required to initiate arbitration of such claims up to the amount of the filing fee Employee would have incurred had Employee filed such claims in federal district court, and UBS shall be responsible for all additional arbitration filing fees, forum fees, and other fees and costs assessed by FINRA or JAMS in any such arbitration.

h.      Additional Provisions Applicable to Arbitration Before JAMS. In any arbitration before JAMS, the parties may file and the arbitrator shall hear and decide at any point in the proceedings any motion permitted by the Federal Rules of Civil Procedure, including but not limited to motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine.

i.      Additional Matters. The provisions of this Agreement shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, such unenforceable or void provision shall not affect the legality, validity or enforceability of the remaining provisions hereof and may be severed from the remaining provisions as appropriate, to the extent permitted by law, except that, in the event any of the Waivers set forth in paragraph d of this Agreement are determined to be invalid, unenforceable or void with respect to any Covered Claim, that Covered Claim and only that Covered Claim shall proceed in court and the Waivers set forth in paragraph d of this Agreement shall remain effective and enforceable with respect to all other Covered Claims. If a court of competent jurisdiction determines that a particular provision of this Agreement is in conflict with a mandatory provision of applicable law in a particular jurisdiction, such provision will not be enforced in that jurisdiction but shall remain effective and enforceable in all other jurisdictions. Insofar as any Covered Claim is permitted to proceed on a

class, collective or representative action basis, it may do so only in a court of competent jurisdiction and not in arbitration.

Composite Exhibit  C  Page 8 of 32
Deferred Compensation Notes

## PROMISSORY NOTE #B00015212N

$212,046.00                                                                March 17, 2016

     FOR VALUE RECEIVED, LORENZO ESTEVA, (the "Employee") promises to pay, as herein provided, UBS Credit Corp., a Delaware corporation and its successors and/or assigns, including all affiliates and related entities ("UBS"), in lawful money of the United States of America, at 1000 Harbor Boulevard, Weehawken, NJ 07086, or at such other place as UBS may direct, the principal sum of $212,046.00 (the "Principal Amount"), together with interest thereon from the date of this Note at a per annum interest rate of 1.7500% ("Interest Rate").  All interest will be computed on the basis of the number of days elapsed and a 360-day year.  In the event that the first payment date below is more than one year from the date of this Promissory Note, interest will be accrued until the first payment date.

     The Principal Amount, together with all accrued but unpaid interest thereon and any and all other fees or other charges payable in connection with this Promissory Note, including but not limited to any penalty incurred for late payment as described herein (collectively the "Obligations"), shall be due and payable in the amounts and on the dates set forth immediately below:

     $23,560.67, plus accrued interest, on Feb 28, 2017
     $23,560.67, plus accrued interest, on Feb 28, 2018
     $23,560.67, plus accrued interest, on Feb 28, 2019
     $23,560.67, plus accrued interest, on Feb 29, 2020
     $23,560.67, plus accrued interest, on Feb 28, 2021
     $23,560.67, plus accrued interest, on Feb 28, 2022
     $23,560.67, plus accrued interest, on Feb 28, 2023
     $23,560.67, plus accrued interest, on Feb 29, 2024
     $23,560.64, plus accrued interest, on Feb 28, 2025

Employee understands and agrees that, to the extent permitted by applicable law, in the event that a payment due under this Note is not received by UBS within 10 days of the date set forth herein, he/she shall pay an additional late fee in the amount of 2% of the outstanding payment. In no event will this late fee exceed the maximum amount permitted by applicable law.

     To the fullest extent permitted by law, Employee authorizes UBS to offset the above payments at the time they are due from any salary, commission, bonus, award, transition payment, or other compensation payable to the Employee by UBS and all related entities and/or any funds held by Employee in his/her UBS Financial Services Resource Management Account ("RMA"), or any other account maintained at UBS, other than deferred compensation as defined

## Composite Exhibit  C  Page 9 of 32
## Deferred Compensation Notes

in Section 409A of the Internal Revenue Code and any related regulations and guidance, as the same may be amended from time to time ("I.R.C. Section 409A").  Notwithstanding the foregoing, to the fullest extent permitted by law, Employee additionally authorizes UBS to offset the above payments on a monthly basis in advance of when they are due from any salary, commission, bonus, award, transition payment, or other compensation payable and/or any funds held by Employee in his/her RMA, other than deferred compensation as defined in I.R.C. Section 409A.  Employee agrees to execute any necessary authorizations related to the offsets described in this paragraph.  All amounts prepaid to UBS shall be applied as payments due on the Principal Amount on the dates set forth above.

This Note shall immediately become due and payable without presentment, demand, protest, notice of default or other notice of any kind, which the Employee hereby expressly waives, in the event that the Employee's employment with UBS or any related entity is terminated, either voluntarily or involuntarily by the Employee or UBS, including any related entity, for any reason whatsoever.

Notwithstanding the above, UBS may demand full or partial payment of the Obligations, at its sole and absolute discretion, at any time.

Principal and interest under this Promissory Note may be prepaid in whole or in part at any time by the Employee.  Any payments or prepayments (whether voluntary or mandatory) shall be applied at the option of UBS, first to collection costs, if any, then to accrued interest and then to principal.

Notwithstanding anything to the contrary contained in this Promissory Note, the interest rate charged hereunder shall not exceed the maximum rate allowable by applicable law.  If the stated interest rate hereunder exceeds the maximum allowable rate, then the interest rate shall be reduced to the maximum allowable rate, and any excess payment of interest made by the Employee at any time shall be applied to any unpaid or future payments due to UBS hereunder (or returned to the Employee if no such payments are or will become due).

The Employee hereby waives diligence, presentment, demand, notice of maturity, protest, notice of protest, notice of non-payment and any other notice of any kind in connection with this Promissory Note.

In the event that any arbitration, suit or other proceeding is brought against the Employee to collect this Promissory Note, UBS shall be entitled to recover from the Employee all costs and reasonable expenses of collection and enforcement, including, without limitation, attorneys' fees and disbursements, including costs and attorneys' fees incurred in defense of any counterclaims asserted by Employee.  In addition, in the event of a payment default hereunder, the Employee shall pay all reasonable attorneys' fees and disbursements incurred by UBS in obtaining advice as to its rights and remedies in connection with such default.

UBS will at all times have a right to set off any or all of the Obligations, at or after the time at which they become due, whether upon demand, by acceleration or otherwise, against all securities, cash, deposits or other property in the possession of or at any time in any account maintained with UBS or any of its related entities by or for the benefit of the Employee, whether

carried individually or jointly with others including but not limited to Employee's RMA, other than items considered to be deferred compensation as defined in I.R.C. Section 409A ("Accounts"). This right is in addition to, and not in limitation of, any right UBS may have pursuant to any agreement, applicable law or otherwise.

As security for the payment of Employee's Obligations under this Promissory Note, Employee hereby grants to UBS and any of its related entities a security interest in and lien on any and all property held or carried in or credited to any and all Accounts ("Property"). All such Property will be subject to UBS's security interest as collateral for the satisfaction and discharge of Employee's Obligations.

In enforcing its security interest, UBS or any of its related entities has absolute discretion to determine the amount, order and manner in which the Property will be sold, and shall also have all other remedies available to a secured party under the Uniform Commercial Code ("UCC") in addition to all other rights provided by this or any other Agreement between the parties or by law. Without limiting any of the foregoing, UBS and any of its related entities shall also have the right, at its sole and absolute discretion, to freeze, take possession of or otherwise exercise control over any and all Accounts, without presentment, demand or notice to Employee, to secure payment of Employee's Obligations under this Promissory Note, such that, among other things, Employee will not be able to transfer the Accounts or make withdrawals from the Accounts unless and until UBS has determined, in its sole and absolute discretion, that Employee's Obligations have been fully satisfied. By signing this Agreement, Employee expressly authorizes and consents to this remedy.

Employee expressly acknowledges and agrees that UBS and any of its related entities will not be liable to Employee in any way for any adverse tax consequences (for tax effect or otherwise) including, but not limited to, any compensatory, consequential, punitive or other damages, resulting from the liquidation or freezing of any Account.

All rights and remedies of UBS under this Promissory Note are cumulative and are in addition to all other rights and remedies that UBS may have at law or equity or under any other contract or other writing for the collection of any amount due under this Promissory Note.

This Note may be assigned by UBS, and the benefits and obligations hereof shall inure to UBS's successors and assigns.

This Promissory Note may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by UBS. The non-exercise by UBS of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance. Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

By their signatures below, Employee and UBS agree to the Arbitration and Class Action Waiver Agreement attached to this Note as Appendix A. Employee acknowledges and agrees

that Employee has read, understands and agrees to the terms and conditions of the Agreement attached hereto as Appendix A.

EXCEPT AS OTHERWISE EXPRESSLY STATED IN APPENDIX A, THIS PROMISSORY NOTE SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

IN WITNESS WHEREOF, Employee has executed this Note as of the date set forth above.

EMPLOYEE:

*Lorenzo Esteva*

UBS:

*Dana Pityovan*

Composite Exhibit  C  Page 12 of 32
Deferred Compensation Notes

APPENDIX A
Arbitration and Class Action Waiver Agreement –Dispute Resolution Agreement

a.      <u>Binding Mutual Arbitration</u>.  By their signatures to the Promissory Note to which this Appendix A is attached, Employee and UBS agree that any Covered Claims (defined below) will be resolved by final and binding arbitration as set forth in this Dispute Resolution Agreement ("Agreement").  This Agreement applies with respect to all Covered Claims, whether initiated by Employee or UBS.  By agreeing to this Agreement, Employee and UBS each acknowledge and agree that, to the fullest extent permitted by law, Employee and UBS are giving up Employee's and its right to a jury trial of Covered Claims.  The Agreement shall be governed by and interpreted in accordance with the Federal Arbitration Act ("FAA") and the law of the State of New Jersey to the extent New Jersey law is not inconsistent with the FAA and without regard to conflicts of law principles.

b.      <u>Covered Claims</u>.  Except for the Excluded Claims (defined below), and to the fullest extent permitted by law, Covered Claims include any and all claims or disputes between Employee and UBS, or UBS's parents, subsidiaries, affiliates, partners, predecessors, and successor corporations and business entities, and its and their officers, directors, employees, and agents, including but not limited to all claims and disputes arising out of or in any way relating to Employee's employment, compensation, benefits and terms and conditions of employment with UBS or any of UBS's current, former or future parents, subsidiaries, affiliates, partners, predecessors, or successor or affiliated or related corporations or business entities, including without limitation UBS AG and UBS Financial Services Inc. ("UBS business entities"), or the termination thereof, including but not limited to contract, tort, defamation, breach of fiduciary duty and other common law claims, wage and hour claims, statutory discrimination, harassment and retaliation claims, and claims arising under or relating to any federal, state or local constitution, statute or regulation, including, without limitation, the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Employee Retirement Income Security Act ("ERISA"), the Worker Adjustment and Retraining Notification Act ("WARN"), the Equal Pay Act ("EPA"), the Americans With Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and any other federal, state or local wage and hour, compensation, benefits, or discrimination law, and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action now or hereafter recognized.

c.      <u>Excluded Claims</u>.  The following claims and disputes are not subject to this Agreement: (i) applications by either party for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration, (ii) claims for workers' compensation benefits, but not retaliation claims arising out of or relating to claims for workers' compensation benefits, (iii) claims for unemployment compensation benefits, (iv) claims under the National Labor Relations Act, as amended, within the exclusive jurisdiction of the National Labor Relations Board, and (v) any claim that is expressly precluded from arbitration by a federal statute or regulation.  Nothing in this Agreement shall prohibit Employee from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National

Composite Exhibit  C  Page 13 of 32
Deferred Compensation Notes

Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency. Employee also has the right to challenge the validity of the terms and conditions of this Agreement on any grounds that may exist in law and equity, and UBS shall not discipline, discharge, or engage in any retaliatory actions against Employee in the event Employee chooses to do so or engage in other protected legal activity. UBS, however, reserves the right to enforce the terms and conditions of this Agreement in any appropriate forum.

d.   <u>WAIVERS</u>.  TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EMPLOYEE AND UBS AGREE THAT NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD, OR DETERMINED ON A CLASS ACTION BASIS, COLLECTIVE ACTION BASIS, OR REPRESENTATIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION, AND THAT EMPLOYEE IS NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS ACTION MEMBER OR REPRESENTATIVE, COLLECTIVE ACTION MEMBER OR REPRESENTATIVE, OR REPRESENTATIVE ACTION MEMBER OR REPRESENTATIVE, OR RECEIVE ANY RECOVERY FROM A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION INVOLVING COVERED CLAIMS EITHER IN COURT OR IN ARBITRATION.  Employee further agrees that if Employee is included within any class action, collective action, or representative action in court or in arbitration involving a Covered Claim, Employee will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be.  Any issue concerning the validity or enforceability of any of the class action, collective action, or representative action Waivers contained in this Agreement shall be decided only by a court of competent jurisdiction.  Any issue concerning arbitrability of a particular issue or claim pursuant to this Agreement (except for issues concerning the validity or enforceability of the class action, collective action, and representative action Waivers) must be resolved by the arbitrator, not the court.  Nothing in this Agreement shall preclude Employee from pursuing or participating in a class action, collective action, or representative action in court where Employee's claim is based solely on Employee's status as a customer or an investor and does not arise out of or in any way relate to Employee's employment relationship with UBS.

e.   <u>Selection and Rules</u>.  Except as specified herein, the applicable arbitration rules will be the rules of the selected arbitration forum as indicated below, or any successor rules or, if none exist, the rules most applicable to employment claims and disputes and, if the forum no longer exists, the successor forum.  Except as specified herein, any arbitration of a Covered Claim will be conducted under the auspices and rules of the Financial Industry Regulatory Authority ("FINRA") in accordance with the FINRA Code of Arbitration Procedure for Industry Disputes ("FINRA Arbitration Rules").  If a Covered Claim may not be arbitrated before FINRA or is otherwise excluded from or not subject to arbitration before FINRA, then such Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Arbitration Rules"),  except as specified herein, and shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing.  In addition, Employee may elect to arbitrate discrimination claims under any federal, state or local law (including claims of harassment and retaliation under those laws) before JAMS in accordance with and

**Composite Exhibit  C  Page 14 of 32**
**Deferred Compensation Notes**

subject to the JAMS Arbitration Rules, and any such arbitration shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing. Arbitration shall be held in the county in which Employee worked or work at the time the claim arose or, if not possible, in the county closest to Employee's principal place of employment at the time the claim arose where the arbitration can be held. To the extent any of the terms, conditions or requirements of this Agreement conflict with the JAMS Arbitration Rules or FINRA Arbitration Rules, the terms, conditions or requirements of this Agreement shall govern. Arbitrators are required to issue a written award, and their awards shall be final and binding, and any judgment or award issued by an arbitrator may be entered in any court of competent jurisdiction. No arbitration award or decision will have any preclusive effect as to any issues or claims in any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the arbitration.

f.      <u>Remedies</u>.  Subject to the parties' right to appeal or seek vacatur under applicable law, Employee and UBS agree that the decision of the arbitrator(s) will be final and binding on the parties and that the arbitrator(s) is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction, including attorneys' fees and costs. As part of Employee's costs, Employee may recover expert fees incurred by Employee to the same extent as Employee could in court.

g.      <u>Additional Provisions Applicable to Arbitration of Statutory Claims</u>.  Subject to any applicable fee-shifting provisions, if Employee initiates arbitration of statutory claims with FINRA or JAMS, Employee shall be responsible for the filing fee required to initiate arbitration of such claims up to the amount of the filing fee Employee would have incurred had Employee filed such claims in federal district court, and UBS shall be responsible for all additional arbitration filing fees, forum fees, and other fees and costs assessed by FINRA or JAMS in any such arbitration.

h.      <u>Additional Provisions Applicable to Arbitration Before JAMS</u>.  In any arbitration before JAMS, the parties may file and the arbitrator shall hear and decide at any point in the proceedings any motion permitted by the Federal Rules of Civil Procedure, including but not limited to motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine.

i.      <u>Additional Matters</u>.  The provisions of this Agreement shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, such unenforceable or void provision shall not affect the legality, validity or enforceability of the remaining provisions hereof and may be severed from the remaining provisions as appropriate, to the extent permitted by law, except that, in the event any of the Waivers set forth in paragraph d of this Agreement are determined to be invalid, unenforceable or void with respect to any Covered Claim, that Covered Claim and only that Covered Claim shall proceed in court and the Waivers set forth in paragraph d of this Agreement shall remain effective and enforceable with respect to all other Covered Claims. If a court of competent jurisdiction determines that a particular provision of this Agreement is in conflict with a mandatory provision of applicable law in a particular jurisdiction, such provision will not be enforced in that jurisdiction but shall remain effective and enforceable in all other jurisdictions. Insofar as any Covered Claim is permitted to proceed on a

class, collective or representative action basis, it may do so only in a court of competent jurisdiction and not in arbitration.

Composite Exhibit  C  Page 16 of 32
Deferred Compensation Notes

## PROMISSORY NOTE #B00015638N

$290,623.00                                                          June 14, 2016

       FOR VALUE RECEIVED, LORENZO ESTEVA, (the "Employee") promises to pay, as herein provided, UBS Credit Corp., a Delaware corporation and its successors and/or assigns, including all affiliates and related entities ("UBS"), in lawful money of the United States of America, at 1000 Harbor Boulevard, Weehawken, NJ 07086, or at such other place as UBS may direct, the principal sum of $290,623.00 (the "Principal Amount"), together with interest thereon from the date of this Note at a per annum interest rate of 1.6800% ("Interest Rate"). All interest will be computed on the basis of the number of days elapsed and a 360-day year. In the event that the first payment date below is more than one year from the date of this Promissory Note, interest will be accrued until the first payment date.

       The Principal Amount, together with all accrued but unpaid interest thereon and any and all other fees or other charges payable in connection with this Promissory Note, including but not limited to any penalty incurred for late payment as described herein (collectively the "Obligations"), shall be due and payable in the amounts and on the dates set forth immediately below:

              $32,291.44, plus accrued interest, on May 31, 2017
              $32,291.44, plus accrued interest, on May 31, 2018
              $32,291.44, plus accrued interest, on May 31, 2019
              $32,291.44, plus accrued interest, on May 31, 2020
              $32,291.44, plus accrued interest, on May 31, 2021
              $32,291.44, plus accrued interest, on May 31, 2022
              $32,291.44, plus accrued interest, on May 31, 2023
              $32,291.44, plus accrued interest, on May 31, 2024
              $32,291.48, plus accrued interest, on May 31, 2025

Employee understands and agrees that, to the extent permitted by applicable law, in the event that a payment due under this Note is not received by UBS within 10 days of the date set forth herein, he/she shall pay an additional late fee in the amount of 2% of the outstanding payment. In no event will this late fee exceed the maximum amount permitted by applicable law.

       To the fullest extent permitted by law, Employee authorizes UBS to offset the above payments at the time they are due from any salary, commission, bonus, award, transition payment, or other compensation payable to the Employee by UBS and all related entities and/or any funds held by Employee in his/her UBS Financial Services Resource Management Account ("RMA"), or any other account maintained at UBS, other than deferred compensation as defined

in Section 409A of the Internal Revenue Code and any related regulations and guidance, as the same may be amended from time to time ("I.R.C. Section 409A"). Notwithstanding the foregoing, to the fullest extent permitted by law, Employee additionally authorizes UBS to offset the above payments on a monthly basis in advance of when they are due from any salary, commission, bonus, award, transition payment, or other compensation payable and/or any funds held by Employee in his/her RMA, other than deferred compensation as defined in I.R.C. Section 409A. Employee agrees to execute any necessary authorizations related to the offsets described in this paragraph. All amounts prepaid to UBS shall be applied as payments due on the Principal Amount on the dates set forth above.

This Note shall immediately become due and payable without presentment, demand, protest, notice of default or other notice of any kind, which the Employee hereby expressly waives, in the event that the Employee's employment with UBS or any related entity is terminated, either voluntarily or involuntarily by the Employee or UBS, including any related entity, for any reason whatsoever.

Notwithstanding the above, UBS may demand full or partial payment of the Obligations, at its sole and absolute discretion, at any time.

Principal and interest under this Promissory Note may be prepaid in whole or in part at any time by the Employee. Any payments or prepayments (whether voluntary or mandatory) shall be applied at the option of UBS, first to collection costs, if any, then to accrued interest and then to principal.

Notwithstanding anything to the contrary contained in this Promissory Note, the interest rate charged hereunder shall not exceed the maximum rate allowable by applicable law. If the stated interest rate hereunder exceeds the maximum allowable rate, then the interest rate shall be reduced to the maximum allowable rate, and any excess payment of interest made by the Employee at any time shall be applied to any unpaid or future payments due to UBS hereunder (or returned to the Employee if no such payments are or will become due).

The Employee hereby waives diligence, presentment, demand, notice of maturity, protest, notice of protest, notice of non-payment and any other notice of any kind in connection with this Promissory Note.

In the event that any arbitration, suit or other proceeding is brought against the Employee to collect this Promissory Note, UBS shall be entitled to recover from the Employee all costs and reasonable expenses of collection and enforcement, including, without limitation, attorneys' fees and disbursements, including costs and attorneys' fees incurred in defense of any counterclaims asserted by Employee. In addition, in the event of a payment default hereunder, the Employee shall pay all reasonable attorneys' fees and disbursements incurred by UBS in obtaining advice as to its rights and remedies in connection with such default.

UBS will at all times have a right to set off any or all of the Obligations, at or after the time at which they become due, whether upon demand, by acceleration or otherwise, against all securities, cash, deposits or other property in the possession of or at any time in any account maintained with UBS or any of its related entities by or for the benefit of the Employee, whether

Composite Exhibit  C  Page 18 of 32
Deferred Compensation Notes

carried individually or jointly with others including but not limited to Employee's RMA, other than items considered to be deferred compensation as defined in I.R.C. Section 409A ("Accounts"). This right is in addition to, and not in limitation of, any right UBS may have pursuant to any agreement, applicable law or otherwise.

As security for the payment of Employee's Obligations under this Promissory Note, Employee hereby grants to UBS and any of its related entities a security interest in and lien on any and all property held or carried in or credited to any and all Accounts ("Property"). All such Property will be subject to UBS's security interest as collateral for the satisfaction and discharge of Employee's Obligations.

In enforcing its security interest, UBS or any of its related entities has absolute discretion to determine the amount, order and manner in which the Property will be sold, and shall also have all other remedies available to a secured party under the Uniform Commercial Code ("UCC") in addition to all other rights provided by this or any other Agreement between the parties or by law. Without limiting any of the foregoing, UBS and any of its related entities shall also have the right, at its sole and absolute discretion, to freeze, take possession of or otherwise exercise control over any and all Accounts, without presentment, demand or notice to Employee, to secure payment of Employee's Obligations under this Promissory Note, such that, among other things, Employee will not be able to transfer the Accounts or make withdrawals from the Accounts unless and until UBS has determined, in its sole and absolute discretion, that Employee's Obligations have been fully satisfied. By signing this Agreement, Employee expressly authorizes and consents to this remedy.

Employee expressly acknowledges and agrees that UBS and any of its related entities will not be liable to Employee in any way for any adverse tax consequences (for tax effect or otherwise) including, but not limited to, any compensatory, consequential, punitive or other damages, resulting from the liquidation or freezing of any Account.

All rights and remedies of UBS under this Promissory Note are cumulative and are in addition to all other rights and remedies that UBS may have at law or equity or under any other contract or other writing for the collection of any amount due under this Promissory Note.

This Note may be assigned by UBS, and the benefits and obligations hereof shall inure to UBS's successors and assigns.

This Promissory Note may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by UBS. The non-exercise by UBS of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance. Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

By their signatures below, Employee and UBS agree to the Arbitration and Class Action Waiver Agreement attached to this Note as Appendix A. Employee acknowledges and agrees

that Employee has read, understands and agrees to the terms and conditions of the Agreement attached hereto as Appendix A.

EXCEPT AS OTHERWISE EXPRESSLY STATED IN APPENDIX A, THIS PROMISSORY NOTE SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

IN WITNESS WHEREOF, Employee has executed this Note as of the date set forth above.

EMPLOYEE:

*Lorenzo Esteva*

UBS:

*Dana Litynewan*

Page 4 of 8

APPENDIX A
Arbitration and Class Action Waiver Agreement –Dispute Resolution Agreement

a.      Binding Mutual Arbitration.  By their signatures to the Promissory Note to which this Appendix A is attached, Employee and UBS agree that any Covered Claims (defined below) will be resolved by final and binding arbitration as set forth in this Dispute Resolution Agreement ("Agreement").  This Agreement applies with respect to all Covered Claims, whether initiated by Employee or UBS.  By agreeing to this Agreement, Employee and UBS each acknowledge and agree that, to the fullest extent permitted by law, Employee and UBS are giving up Employee's and its right to a jury trial of Covered Claims.  The Agreement shall be governed by and interpreted in accordance with the Federal Arbitration Act ("FAA") and the law of the State of New Jersey to the extent New Jersey law is not inconsistent with the FAA and without regard to conflicts of law principles.

b.      Covered Claims.  Except for the Excluded Claims (defined below), and to the fullest extent permitted by law, Covered Claims include any and all claims or disputes between Employee and UBS, or UBS's parents, subsidiaries, affiliates, partners, predecessors, and successor corporations and business entities, and its and their officers, directors, employees, and agents, including but not limited to all claims and disputes arising out of or in any way relating to Employee's  employment, compensation, benefits and terms and conditions of employment with UBS or any of UBS's current, former or future parents, subsidiaries, affiliates, partners, predecessors, or successor or affiliated or related corporations or business entities, including without limitation UBS AG and UBS Financial Services Inc. ("UBS business entities"), or the termination thereof, including but not limited to contract, tort, defamation, breach of fiduciary duty and other common law claims, wage and hour claims, statutory discrimination, harassment and retaliation claims, and claims arising under or relating to any federal, state or local constitution, statute or regulation, including, without limitation, the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Employee Retirement Income Security Act ("ERISA"), the Worker Adjustment and Retraining Notification Act ("WARN"), the Equal Pay Act ("EPA"), the Americans With Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and any other federal, state or local wage and hour, compensation, benefits, or discrimination law, and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action now or hereafter recognized.

c.      Excluded Claims.  The following claims and disputes are not subject to this Agreement: (i) applications by either party for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration, (ii) claims for workers' compensation benefits, but not retaliation claims arising out of or relating to claims for workers' compensation benefits, (iii) claims for unemployment compensation benefits, (iv) claims under the National Labor Relations Act, as amended, within the exclusive jurisdiction of the National Labor Relations Board, and (v) any claim that is expressly precluded from arbitration by a federal statute or regulation.  Nothing in this Agreement shall prohibit Employee from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National

Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency. Employee also has the right to challenge the validity of the terms and conditions of this Agreement on any grounds that may exist in law and equity, and UBS shall not discipline, discharge, or engage in any retaliatory actions against Employee in the event Employee chooses to do so or engage in other protected legal activity. UBS, however, reserves the right to enforce the terms and conditions of this Agreement in any appropriate forum.

d. <u>WAIVERS</u>. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EMPLOYEE AND UBS AGREE THAT NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD, OR DETERMINED ON A CLASS ACTION BASIS, COLLECTIVE ACTION BASIS, OR REPRESENTATIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION, AND THAT EMPLOYEE IS NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS ACTION MEMBER OR REPRESENTATIVE, COLLECTIVE ACTION MEMBER OR REPRESENTATIVE, OR REPRESENTATIVE ACTION MEMBER OR REPRESENTATIVE, OR RECEIVE ANY RECOVERY FROM A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION INVOLVING COVERED CLAIMS EITHER IN COURT OR IN ARBITRATION. Employee further agrees that if Employee is included within any class action, collective action, or representative action in court or in arbitration involving a Covered Claim, Employee will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be. Any issue concerning the validity or enforceability of any of the class action, collective action, or representative action Waivers contained in this Agreement shall be decided only by a court of competent jurisdiction. Any issue concerning arbitrability of a particular issue or claim pursuant to this Agreement (except for issues concerning the validity or enforceability of the class action, collective action, and representative action Waivers) must be resolved by the arbitrator, not the court. Nothing in this Agreement shall preclude Employee from pursuing or participating in a class action, collective action, or representative action in court where Employee's claim is based solely on Employee's status as a customer or an investor and does not arise out of or in any way relate to Employee's employment relationship with UBS.

e. <u>Selection and Rules</u>. Except as specified herein, the applicable arbitration rules will be the rules of the selected arbitration forum as indicated below, or any successor forum or, if none exist, the rules most applicable to employment claims and disputes and, if the forum no longer exists, the successor forum. Except as specified herein, any arbitration of a Covered Claim will be conducted under the auspices and rules of the Financial Industry Regulatory Authority ("FINRA") in accordance with the FINRA Code of Arbitration Procedure for Industry Disputes ("FINRA Arbitration Rules"). If a Covered Claim may not be arbitrated before FINRA or is otherwise excluded from or not subject to arbitration before FINRA, then such Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Arbitration Rules"), except as specified herein, and shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing. In addition, Employee may elect to arbitrate discrimination claims under any federal, state or local law (including claims of harassment and retaliation under those laws) before JAMS in accordance with and

subject to the JAMS Arbitration Rules, and any such arbitration shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing.  Arbitration shall be held in the county in which Employee worked or work at the time the claim arose or, if not possible, in the county closest to Employee's principal place of employment at the time the claim arose where the arbitration can be held.   To the extent any of the terms, conditions or requirements of this Agreement conflict with the JAMS Arbitration Rules or FINRA Arbitration Rules, the terms, conditions or requirements of this Agreement shall govern.  Arbitrators are required to issue a written award, and their awards shall be final and binding, and any judgment or award issued by an arbitrator may be entered in any court of competent jurisdiction.  No arbitration award or decision will have any preclusive effect as to any issues or claims in any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the arbitration.

f.      Remedies.  Subject to the parties' right to appeal or seek vacatur under applicable law, Employee and UBS agree that the decision of the arbitrator(s) will be final and binding on the parties and that the arbitrator(s) is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction, including attorneys' fees and costs.  As part of Employee's costs, Employee may recover expert fees incurred by Employee to the same extent as Employee could in court.

g.      Additional Provisions Applicable to Arbitration of Statutory Claims.  Subject to any applicable fee-shifting provisions, if Employee initiates arbitration of statutory claims with FINRA or JAMS, Employee shall be responsible for the filing fee required to initiate arbitration of such claims up to the amount of the filing fee Employee would have incurred had Employee filed such claims in federal district court, and UBS shall be responsible for all additional arbitration filing fees, forum fees, and other fees and costs assessed by FINRA or JAMS in any such arbitration.

h.      Additional Provisions Applicable to Arbitration Before JAMS.  In any arbitration before JAMS, the parties may file and the arbitrator shall hear and decide at any point in the proceedings any motion permitted by the Federal Rules of Civil Procedure, including but not limited to motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine.

i.      Additional Matters.  The provisions of this Agreement shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, such unenforceable or void provision shall not affect the legality, validity or enforceability of the remaining provisions hereof and may be severed from the remaining provisions as appropriate, to the extent permitted by law, except that, in the event any of the Waivers set forth in paragraph d of this Agreement are determined to be invalid, unenforceable or void with respect to any Covered Claim, that Covered Claim and only that Covered Claim shall proceed in court and the Waivers set forth in paragraph d of this Agreement shall remain effective and enforceable with respect to all other Covered Claims.  If a court of competent jurisdiction determines that a particular provision of this Agreement is in conflict with a mandatory provision of applicable law in a particular jurisdiction, such provision will not be enforced in that jurisdiction but shall remain effective and enforceable in all other jurisdictions.  Insofar as any Covered Claim is permitted to proceed on a

class, collective or representative action basis, it may do so only in a court of competent jurisdiction and not in arbitration.

Composite Exhibit  C  Page 24 of 32
Deferred Compensation Notes

## PROMISSORY NOTE #B00016035N

$67,328.10                                                              September 20, 2016

       FOR VALUE RECEIVED, LORENZO ESTEVA, (the "Employee") promises to pay, as herein provided, UBS Credit Corp., a Delaware corporation and its successors and/or assigns, including all affiliates and related entities ("UBS"), in lawful money of the United States of America, at 1000 Harbor Boulevard, Weehawken, NJ 07086, or at such other place as UBS may direct, the principal sum of $67,328.10 (the "Principal Amount"), together with interest thereon from the date of this Note at a per annum interest rate of 1.4600% ("Interest Rate"). All interest will be computed on the basis of the number of days elapsed and a 360-day year. In the event that the first payment date below is more than one year from the date of this Promissory Note, interest will be accrued until the first payment date.

       The Principal Amount, together with all accrued but unpaid interest thereon and any and all other fees or other charges payable in connection with this Promissory Note, including but not limited to any penalty incurred for late payment as described herein (collectively the "Obligations"), shall be due and payable in the amounts and on the dates set forth immediately below:

             $7,480.90, plus accrued interest, on Aug 31, 2017
             $7,480.90, plus accrued interest, on Aug 31, 2018
             $7,480.90, plus accrued interest, on Aug 31, 2019
             $7,480.90, plus accrued interest, on Aug 31, 2020
             $7,480.90, plus accrued interest, on Aug 31, 2021
             $7,480.90, plus accrued interest, on Aug 31, 2022
             $7,480.90, plus accrued interest, on Aug 31, 2023
             $7,480.90, plus accrued interest, on Aug 31, 2024
             $7,480.90, plus accrued interest, on Aug 31, 2025

Employee understands and agrees that, to the extent permitted by applicable law, in the event that a payment due under this Note is not received by UBS within 10 days of the date set forth herein, he/she shall pay an additional late fee in the amount of 2% of the outstanding payment. In no event will this late fee exceed the maximum amount permitted by applicable law.

       To the fullest extent permitted by law, Employee authorizes UBS to offset the above payments at the time they are due from any salary, commission, bonus, award, transition payment, or other compensation payable to the Employee by UBS and all related entities and/or any funds held by Employee in his/her UBS Financial Services Resource Management Account ("RMA"), or any other account maintained at UBS, other than deferred compensation as defined

**Composite Exhibit C  Page 25 of 32**
**Deferred Compensation Notes**

in Section 409A of the Internal Revenue Code and any related regulations and guidance, as the same may be amended from time to time ("I.R.C. Section 409A"). Notwithstanding the foregoing, to the fullest extent permitted by law, Employee additionally authorizes UBS to offset the above payments on a monthly basis in advance of when they are due from any salary, commission, bonus, award, transition payment, or other compensation payable and/or any funds held by Employee in his/her RMA, other than deferred compensation as defined in I.R.C. Section 409A. Employee agrees to execute any necessary authorizations related to the offsets described in this paragraph. All amounts prepaid to UBS shall be applied as payments due on the Principal Amount on the dates set forth above.

This Note shall immediately become due and payable without presentment, demand, protest, notice of default or other notice of any kind, which the Employee hereby expressly waives, in the event that the Employee's employment with UBS or any related entity is terminated, either voluntarily or involuntarily by the Employee or UBS, including any related entity, for any reason whatsoever.

Notwithstanding the above, UBS may demand full or partial payment of the Obligations, at its sole and absolute discretion, at any time.

Principal and interest under this Promissory Note may be prepaid in whole or in part at any time by the Employee. Any payments or prepayments (whether voluntary or mandatory) shall be applied at the option of UBS, first to collection costs, if any, then to accrued interest and then to principal.

Notwithstanding anything to the contrary contained in this Promissory Note, the interest rate charged hereunder shall not exceed the maximum rate allowable by applicable law. If the stated interest rate hereunder exceeds the maximum allowable rate, then the interest rate shall be reduced to the maximum allowable rate, and any excess payment of interest made by the Employee at any time shall be applied to any unpaid or future payments due to UBS hereunder (or returned to the Employee if no such payments are or will become due).

The Employee hereby waives diligence, presentment, demand, notice of maturity, protest, notice of protest, notice of non-payment and any other notice of any kind in connection with this Promissory Note.

In the event that any arbitration, suit or other proceeding is brought against the Employee to collect this Promissory Note, UBS shall be entitled to recover from the Employee all costs and reasonable expenses of collection and enforcement, including, without limitation, attorneys' fees and disbursements, including costs and attorneys' fees incurred in defense of any counterclaims asserted by Employee. In addition, in the event of a payment default hereunder, the Employee shall pay all reasonable attorneys' fees and disbursements incurred by UBS in obtaining advice as to its rights and remedies in connection with such default.

UBS will at all times have a right to set off any or all of the Obligations, at or after the time at which they become due, whether upon demand, by acceleration or otherwise, against all securities, cash, deposits or other property in the possession of or at any time in any account maintained with UBS or any of its related entities by or for the benefit of the Employee, whether

carried individually or jointly with others including but not limited to Employee's RMA, other than items considered to be deferred compensation as defined in I.R.C. Section 409A ("Accounts"). This right is in addition to, and not in limitation of, any right UBS may have pursuant to any agreement, applicable law or otherwise.

As security for the payment of Employee's Obligations under this Promissory Note, Employee hereby grants to UBS and any of its related entities a security interest in and lien on any and all property held or carried in or credited to any and all Accounts ("Property"). All such Property will be subject to UBS's security interest as collateral for the satisfaction and discharge of Employee's Obligations.

In enforcing its security interest, UBS or any of its related entities has absolute discretion to determine the amount, order and manner in which the Property will be sold, and shall also have all other remedies available to a secured party under the Uniform Commercial Code ("UCC") in addition to all other rights provided by this or any other Agreement between the parties or by law. Without limiting any of the foregoing, UBS and any of its related entities shall also have the right, at its sole and absolute discretion, to freeze, take possession of or otherwise exercise control over any and all Accounts, without permission, demand or notice to Employee, to secure payment of Employee's Obligations under this Promissory Note, such that, among other things, Employee will not be able to transfer the Accounts or make withdrawals from the Accounts unless and until UBS has determined, in its sole and absolute discretion, that Employee's Obligations have been fully satisfied. By signing this Agreement, Employee expressly authorizes and consents to this remedy.

Employee expressly acknowledges and agrees that UBS and any of its related entities will not be liable to Employee in any way for any adverse tax consequences (for tax effect or otherwise) including, but not limited to, any compensatory, consequential, punitive or other damages, resulting from the liquidation or freezing of any Account.

All rights and remedies of UBS under this Promissory Note are cumulative and are in addition to all other rights and remedies that UBS may have at law or equity or under any other contract or other writing for the collection of any amount due under this Promissory Note.

This Note may be assigned by UBS, and the benefits and obligations hereof shall inure to UBS's successors and assigns.

This Promissory Note may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by UBS. The non-exercise by UBS of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance. Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

By their signatures below, Employee and UBS agree to the Arbitration and Class Action Waiver Agreement attached to this Note as Appendix A. Employee acknowledges and agrees

that Employee has read, understands and agrees to the terms and conditions of the Agreement attached hereto as Appendix A.

EXCEPT AS OTHERWISE EXPRESSLY STATED IN APPENDIX A, THIS PROMISSORY NOTE SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

IN WITNESS WHEREOF, Employee has executed this Note as of the date set forth above.

EMPLOYEE:

*Lorenzo Esteva*

UBS:

*Dana Pitrycau*

Page 4 of 8

Composite Exhibit  C  Page 28 of 32
Deferred Compensation Notes

APPENDIX A

Arbitration and Class Action Waiver Agreement –Dispute Resolution Agreement

a.      Binding Mutual Arbitration.  By their signatures to the Promissory Note to which this Appendix A is attached, Employee and UBS agree that any Covered Claims (defined below) will be resolved by final and binding arbitration as set forth in this Dispute Resolution Agreement ("Agreement").  This Agreement applies with respect to all Covered Claims, whether initiated by Employee or UBS.  By agreeing to this Agreement, Employee and UBS each acknowledge and agree that, to the fullest extent permitted by law, Employee and UBS are giving up Employee's and its right to a jury trial of Covered Claims.  The Agreement shall be governed by and interpreted in accordance with the Federal Arbitration Act ("FAA") and the law of the State of New Jersey to the extent New Jersey law is not inconsistent with the FAA and without regard to conflicts of law principles.

b.      Covered Claims.  Except for the Excluded Claims (defined below), and to the fullest extent permitted by law, Covered Claims include any and all claims or disputes between Employee and UBS, or UBS's parents, subsidiaries, affiliates, partners, predecessors, and successor corporations and business entities, and its and their officers, directors, employees, and agents, including but not limited to all claims and disputes arising out of or in any way relating to Employee's  employment, compensation, benefits and terms and conditions of employment with UBS or any of UBS's current, former or future parents, subsidiaries, affiliates, partners, predecessors, or successor or affiliated or related corporations or business entities, including without limitation UBS AG and UBS Financial Services Inc. ("UBS business entities"), or the termination thereof, including but not limited to contract, tort, defamation, breach of fiduciary duty and other common law claims, wage and hour claims, statutory discrimination, harassment and retaliation claims, and claims arising under or relating to any federal, state or local constitution, statute or regulation, including, without limitation, the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Employee Retirement Income Security Act ("ERISA"), the Worker Adjustment and Retraining Notification Act ("WARN"), the Equal Pay Act ("EPA"), the Americans With Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and any other federal, state or local wage and hour, compensation, benefits, or discrimination law, and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action now or hereafter recognized.

c.      Excluded Claims.  The following claims and disputes are not subject to this Agreement: (i) applications by either party for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration, (ii) claims for workers' compensation benefits, but not retaliation claims arising out of or relating to claims for workers' compensation benefits, (iii) claims for unemployment compensation benefits, (iv) claims under the National Labor Relations Act, as amended, within the exclusive jurisdiction of the National Labor Relations Board, and (v) any claim that is expressly precluded from arbitration by a federal statute or regulation.  Nothing in this Agreement shall prohibit Employee from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National

Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency. Employee also has the right to challenge the validity of the terms and conditions of this Agreement on any grounds that may exist in law and equity, and UBS shall not discipline, discharge, or engage in any retaliatory actions against Employee in the event Employee chooses to do so or engage in other protected legal activity. UBS, however, reserves the right to enforce the terms and conditions of this Agreement in any appropriate forum.

    d.   <u>WAIVERS</u>. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EMPLOYEE AND UBS AGREE THAT NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD, OR DETERMINED ON A CLASS ACTION BASIS, COLLECTIVE ACTION BASIS, OR REPRESENTATIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION, AND THAT EMPLOYEE IS NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS ACTION MEMBER OR REPRESENTATIVE, COLLECTIVE ACTION MEMBER OR REPRESENTATIVE, OR REPRESENTATIVE ACTION MEMBER OR REPRESENTATIVE, OR RECEIVE ANY RECOVERY FROM A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION INVOLVING COVERED CLAIMS EITHER IN COURT OR IN ARBITRATION. Employee further agrees that if Employee is included within any class action, collective action, or representative action in court or in arbitration involving a Covered Claim, Employee will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be. Any issue concerning the validity or enforceability of any of the class action, collective action, or representative action Waivers contained in this Agreement shall be decided only by a court of competent jurisdiction. Any issue concerning arbitrability of a particular issue or claim pursuant to this Agreement (except for issues concerning the validity or enforceability of the class action, collective action, and representative action Waivers) must be resolved by the arbitrator, not the court. Nothing in this Agreement shall preclude Employee from pursuing or participating in a class action, collective action, or representative action in court where Employee's claim is based solely on Employee's status as a customer or an investor and does not arise out of or in any way relate to Employee's employment relationship with UBS.

    e.   <u>Selection and Rules</u>. Except as specified herein, the applicable arbitration rules will be the rules of the selected arbitration forum as indicated below, or any successor rules or, if none exist, the rules most applicable to employment claims and disputes and, if the forum no longer exists, the successor forum. Except as specified herein, any arbitration of a Covered Claim will be conducted under the auspices and rules of the Financial Industry Regulatory Authority ("FINRA") in accordance with the FINRA Code of Arbitration Procedure for Industry Disputes ("FINRA Arbitration Rules"). If a Covered Claim may not be arbitrated before FINRA or is otherwise excluded from or not subject to arbitration before FINRA, then such Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Arbitration Rules"), except as specified herein, and shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing. In addition, Employee may elect to arbitrate discrimination claims under any federal, state or local law (including claims of harassment and retaliation under those laws) before JAMS in accordance with and

Deferred Compensation Notes

subject to the JAMS Arbitration Rules, and any such arbitration shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing. Arbitration shall be held in the county in which Employee worked or work at the time the claim arose or, if not possible, in the county closest to Employee's principal place of employment at the time the claim arose where the arbitration can be held. To the extent any of the terms, conditions or requirements of this Agreement conflict with the JAMS Arbitration Rules or FINRA Arbitration Rules, the terms, conditions or requirements of this Agreement shall govern. Arbitrators are required to issue a written award, and their awards shall be final and binding, and any judgment or award issued by an arbitrator may be entered in any court of competent jurisdiction. No arbitration award or decision will have any preclusive effect as to any issues or claims in any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the arbitration.

f.    Remedies.  Subject to the parties' right to appeal or seek vacatur under applicable law, Employee and UBS agree that the decision of the arbitrator(s) will be final and binding on the parties and that the arbitrator(s) is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction, including attorneys' fees and costs.  As part of Employee's costs, Employee may recover expert fees incurred by Employee to the same extent as Employee could in court.

g.    Additional Provisions Applicable to Arbitration of Statutory Claims.  Subject to any applicable fee-shifting provisions, if Employee initiates arbitration of statutory claims with FINRA or JAMS, Employee shall be responsible for the filing fee required to initiate arbitration of such claims up to the amount of the filing fee Employee would have incurred had Employee filed such claims in federal district court, and UBS shall be responsible for all additional arbitration filing fees, forum fees, and other fees and costs assessed by FINRA or JAMS in any such arbitration.

h.    Additional Provisions Applicable to Arbitration Before JAMS.  In any arbitration before JAMS, the parties may file and the arbitrator shall hear and decide at any point in the proceedings any motion permitted by the Federal Rules of Civil Procedure, including but not limited to motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine.

i.    Additional Matters.  The provisions of this Agreement shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, such unenforceable or void provision shall not affect the legality, validity or enforceability of the remaining provisions hereof and may be severed from the remaining provisions as appropriate, to the extent permitted by law, except that, in the event any of the Waivers set forth in paragraph d of this Agreement are determined to be invalid, unenforceable or void with respect to any Covered Claim, that Covered Claim and only that Covered Claim shall proceed in court and the Waivers set forth in paragraph d of this Agreement shall remain effective and enforceable with respect to all other Covered Claims.  If a court of competent jurisdiction determines that a particular provision of this Agreement is in conflict with a mandatory provision of applicable law in a particular jurisdiction, such provision will not be enforced in that jurisdiction but shall remain effective and enforceable in all other jurisdictions.  Insofar as any Covered Claim is permitted to proceed on a

Composite Exhibit  C  Page 31 of 32
Deferred Compensation Notes

class, collective or representative action basis, it may do so only in a court of competent jurisdiction and not in arbitration.

Composite Exhibit  C  Page 32 of 32
Deferred Compensation Notes